UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CAROL S. MARCELLIN, individually,
and as Co-Administrator of the Estate of
Charles E. Hollowell, deceased, and
JESSICA HOLLOWELL-McKAY, as Co-
Administrator of the Estate of Charles E.
Hollowell, deceased,

                    Plaintiffs,

v.

HP, INC., and STAPLES, INC.,

**Civ. No. 1:21-cv-00704-JLS**

**ATTORNEY DECLARATION OF JACLYN WANEMAKER IN SUPPORT OF
MOTION TO COMPEL RESPONSES TO DISCOVERY DEMANDS**

Pursuant to 28 U.S.C.§ 1746, I, Jaclyn S. Wanemaker, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief:

1.    I am an attorney duly admitted to practice in the State of New York and a partner in the firm of Smith, Sovik, Kendrick & Sugnet, PC, attorneys for Defendant HP, Inc. (hereinafter "HP") herein, and as such, I am fully familiar with the facts and circumstances surrounding this case.

2.    I make this declaration in support of HP's cross-motion to compel provide proper and full responses from plaintiffs to HP's Interrogatories and Requests for Production and for the expenses and attorneys' fees incurred for this cross-motion.

## BACKGROUND

3.  This products liability action stems from a January 24, 2020, fire that plaintiffs claim originated in one of Plaintiff Carol Marcellin's laptop computers.

4.  Plaintiffs filed the complaint on June 2, 2021, alleging Marcellin purchased the subject laptop, an HP Pavilion DV6, from Defendant Staples, Inc. in 2010. Dkt. No. 1 at ¶ 10.

5.  HP filed its answer on August 13, 2021. Dkt. No. 8.

6.  After serving its initial disclosures, HP served Interrogatories and Requests for Production on plaintiffs on February 2, 2022. *See* **Exhibit A.**

7.  Plaintiffs responded on March 9, 2022. *See* Dkt. 27-1; **Exhibit B**.

8.  Plaintiffs have since amended their Interrogatory responses twice, on March 30, 2023 and June 21, 2023, respectively. Dkt. Nos. 25-15, 25-29.

9.  The first amended responses followed plaintiffs' eleventh-hour notification that Marcellin purchased the subject laptop in 2015, not in 2010 as previously stated. Dkt. No. 1 at ¶ 10 (alleging laptop was purchased in 2010); Dkt. # 25-9 at 6 (disclosing at 4:39 P.M. the day before the deposition for the first time "[w]e believe the Laptop was purchased in 2015 not 2010.")

10. The change resulted in further document discovery as discussed in June 22, 2023 correspondence to the Court seeking a Second Amended Scheduling Order on behalf of all parties. Dkt. No. 23-1.

11. Counsel exchanged many emails and appeared at a meet and confer on May 12, 2023 to address the various discovery issues and joint request for a Second

Amended Scheduling Order.  Prior to the meet and confer, HP requested supplementation of plaintiffs' discovery responses in a good faith effort to resolve discovery issues, setting forth in detail the responses that are incomplete and the additional information required. Dkt. No. 25-23 at 9-10.

12. HP also requested additional authorizations for medical records because the authorizations provided in plaintiffs' initial responses were insufficient. *Id.*

13. After receipt and review of decedent's records from the few providers for whom authorizations were produced, HP requested authorizations for the many other providers with whom the decedent treated per his records.  HP also requested the autopsy report and confirmation that Marcellin is not claiming physical injuries. *See* **Exhibit C**.

14. Having received no response to any of the above requests, HP followed up by letter on March 27, 2023, May 4, 2023 and June 13, 2023 in a sincere attempt to resolve the discovery dispute without the Court's intervention. *See* **Exhibit D**.

15. These requests were ignored.

16. HP again requested the authorizations on June 15, 2023, this time by email. **Exhibit E.** The emails included in this exchange reflect HP's efforts to resolve the discovery disputes and agree to a discovery schedule in light of plaintiffs' date change.  Prior emails as will be discussed below evince plaintiffs' agreement to produce specific information in response to HP's discovery demands. *See, e.g.* Plaintiff's May 11, 2023 Corresp., Dkt. No. 25-23 at 8-9.

17.   Despite HP's good faith efforts to obtain complete responses without the Court's intervention, plaintiffs' responses remain incomplete.

## I. PLAINTIFFS FAILED TO PROVIDE FULL AND PROPER RESPONSES TO HP'S INTERROGATORIES.

18.   Plaintiffs have failed to provide proper and complete responses to HP's Interrogatories.

19.   In a sincere effort to obtain complete discovery responses without motion practice, HP requested supplementation of plaintiffs' responses setting forth the deficiencies in great detail. Dkt. No. 25-23 at 9-10.  Plaintiffs' counsel agreed to provide second amended Interrogatory responses (*id. a*t 8-9), but those responses fail to remedy many of the deficiencies.

20.   Although plaintiffs' counsel expressly advised the second amended response to Interrogatory No. 2 will "specifically state" that all responsive reports and documents were previously produced, *see* Dkt. No. 25-23 at 8-9, the response, *see* Dkt. No. 25-29 at 3, says no such thing and is identical to the first responses, *see* Dkt. No. 27-1 at 3, and first amended responses, *see* Dkt. No. 25-15 at 3. Plaintiffs' failure to provide this information or a verified response stating that all such information was previously produced is entirely improper. This information concerns documents related to the witnesses identified in response to this interrogatory and is clearly relevant and discoverable.

21.   Like in the response to No. 2, plaintiffs' counsel advised that further information will be provided in response to Interrogatory No. 9, but it was not Dkt. No. 25-23 at 8-9.  No. 9 seeks information about decedent's treatment and

expenses.  Plaintiffs' response is unclear as to whether plaintiffs plan to seek recovery for alleged medical expenses and if so, the amount thereof.  *See* Dkt. No. 25-15 at 10. HP requested clarification which plaintiffs' counsel agreed he would provide including whether there was an ambulance or hospital bill, whether Medicare paid and if there is a lien. Dkt. No. 25-23 at 9-10. No such information was produced and plaintiffs' second amended response is no different than the first two insufficient responses. *Compare* Dkt. Nos. 27-1, 25-15, 25-29 at 7.

22.  Plaintiffs' response to Interrogatory No. 11 is incomplete. This interrogatory seeks information regarding the decedent's health-related issues and medical treatment. Plaintiffs' first two responses identify only his 2000 spinal fracture. *See* Dkt. Nos. 27-1, 25-15, at 8. HP accordingly requested supplementation including plaintiffs' recitation of their knowledge of his disabilities and significant health-related issues. Dkt. No. 25-23 at 9-10.   Plaintiffs' second amended response includes decedent's dementia for the first time as well as hypertension and old war injuries but contains no mention of the other health issues Marcellin testified he suffered including the left upper extremity injury and failed surgery, foot surgeries, hearing loss. Dkt. No. 25-29 at 8. Additionally, plaintiffs failed to identify the names and addresses of any of the providers who treated him for these issues or the dates and number of treatments received for any of his health-related issues as requested.

23.	Plaintiffs' response to Interrogatory No. 12 is incomplete.  This interrogatory asks whether plaintiffs contend that the subject laptop was modified from its original condition from the time it allegedly left the possession or control of HP until the time it was sold to Marcellin. Plaintiffs' first two responses failed to answer the question, instead responding as if it asked about alterations after the initial sale. *See* Dkt. Nos. 27-1, 25-15, at 9.  HP accordingly requested supplementation including whether plaintiffs believe they purchased the subject laptop in new or used/refurbished condition. Plaintiffs' counsel advised that plaintiffs will "make it clear that Plaintiff Carol Marcelin did not alter or modify the laptop after purchase but it was altered by someone after HP manufactured it and before she purchased it by replacement of the battery", Dkt. No. 25-23 at 8-9, but the second amended response fails to state this. *See* Dkt. 25-29.  Instead, it states that Marcellin did not modify, not that it "was altered by someone after HP manufactured it."

24.	Plaintiffs' responses to Interrogatory Nos. 15 and 16 are insufficient and the response to No. 15 includes an answer to No. 16 as well.  The balance of the responses is misnumbered as a result. No. 15 seeks plaintiffs' contention as to any alleged manufacturing defect, information that is clearly relevant and discoverable, but plaintiffs have not answered this interrogatory. *See* Dkt. No. 27-1 at 10, 25-15 at 11, 25-29 at 13.

25.	No. 16 seeks information about the battery pack/cells in the subject laptop, again information that is clearly discoverable.  Plaintiffs inexplicably objected,

Dkt. No. 27-1 at 11, 25-15 at 11, and HP requested supplementation including whether plaintiffs believe the batteries/cells were original to the laptop or if they have reason to believe they were changed. Dkt. No. 25-23 at 9-10. Plaintiffs' counsel advised, "we do believe the battery was changed and do not think this is in dispute.  It is Plaintiffs' contention that the battery in the laptop when Plaintiff Carol Marcellin purchased it was the same battery in the laptop when the fire occurred and was never changed while she owned it.  We will make that clear in our second amended interrogatory answer to this interrogatory" Dkt. No. 25-23 at 9.  Plaintiffs' second amended response states that plaintiffs believe the battery in the subject laptop at the time of the incident was the same battery it contained when Marcellin purchased it from Staples referencing "findings made through the investigation" including markings on the battery pack and the lack of connections which were present in the original battery supplied by HP. Dkt. No. 25-29 at 13. The response fails to include any reply to the question of who plaintiffs contend manufactured the battery pack/cells, and more detailed information is required as to the "findings" upon which plaintiffs base this belief.

26.  Plaintiffs failed to provide the online sellers' information, account credentials and more in response to Interrogatory No. 26.  This interrogatory asks that plaintiffs identify the computer related purchases in the preceding ten years and account credentials for the online sellers. Plaintiffs' first two responses state only that Marcellin purchased the subject laptop, another HP laptop in

December 2019 and a replacement battery for her Compaq laptop, with no information regarding the sellers or other purchases in that time period. Dkt. Nos. 27-1, 25-15 at 13. HP accordingly requested the online sellers' information, Dkt. No. 25-23 at 10, which plaintiffs' counsel agreed to provide including the account credentials, *id.* at 9, but this information has not been produced and the second amended response fails to include Marcellin's additional purchases in that time period. Dkt. No. 25-29 at 16.

27.   Finally, plaintiffs improperly objected to Interrogatory No. 28 which seeks clearly relevant information about modifications to the premises in the ten years before the incident.  This request like the others is reasonably calculated to lead to the discovery of admissible evidence and plaintiffs' objection is meritless.  As plaintiff Marcellin testified, the furnace was replaced shortly before the incident and plaintiffs should be compelled to provide a complete and proper response.

## II. PLAINTIFFS FAILED TO PROVIDE FULL AND PROPER RESPONSES TO HP'S REQUESTS FOR PRODUCTION.

28.   Like the Interrogatory responses, plaintiffs' responses to HP's Requests for Production are incomplete.

29.   At her deposition, Marcellin testified that she provided a statement to her homeowner's carrier Farmers Insurance as well as information regarding the contents of the premises including electronics but none of that has not been produced despite HP's requests. Exhibit A at Nos. 4, 5.  An authorization for

the complete Farmers' claim file should be produced along with any of these records in her possession.

30.    Request for Production No. 13 seeks "All documents evidencing or related to the purchase of any computers or computer related equipment or component parts for a period of ten (10) years prior the Incident to present." Exhibit A at 9.  In response, plaintiffs produced one statement from Marcellin's credit union which was represented as showing a July 22, 2015 purchase in the amount of $16.17 for a replacement battery for the Compaq laptop she claims she purchased in the early 1990s. Exhibit B at 5.  Nothing further was produced although this response states that Marcellin's credit union statements from 2015-2018 were provided via Sharefile. *Id.*  They were not, and no records of her other purchases have been produced.

31.    The omission of Marcellin's credit statements is particularly concerning given counsel's statement that "All of her records including her receipts and statements of credit card purchases were destroyed in the fire…. My office performed an extensive search of all of her credit card accounts and could find no evidence of a replacement battery purchase." Dkt. No. 25 at ¶ 6. Moreover, Marcellin testified about additional purchases during the time period this request covers but no documentation of those purchases has been produced. Marcellin's various account statements are clearly responsive to HP's Requests for Production, Exhibit B at Nos. 12, 13, not only with respect to her purchase of replacement parts but also the laptop itself.

32. Request for Production No. 25 seeks decedent's medical records, Exhibit A at No. 25, which are relevant not only to potential damages but also to plaintiffs' allegation that his disability affected his ability to exit the building. Dkt. No. 1 at ¶ 13. Plaintiffs identified two of his treatment providers in response and provided authorizations for Bath VA Medical Center, Universal Primary Care, Olean General Hospital and Dan Horn Pharmacy. Exhibit B at No. 25. Upon obtaining those records, HP requested additional authorizations for the many other treatment providers identified in decedent's records. Exhibits C–E. It was not until June 20, 2023, that any authorizations responsive to these requests were provided. The authorization provided for Dent Neurological was rejected by this provider and the plaintiffs should be compelled to provide a valid Dent authorization.

33. The records that have been ordered but not yet received due to the extensive delay by plaintiffs in providing authorizations may well reveal further treatment and HP reserves the right to make any and all further motions as may be necessary based upon information and disclosure which may result from the granting of the requests made herein and/or information received from any record.

## III. PLAINTIFFS FAILED TO SUPPLEMENT DESPITE FURTHER MEET-AND-CONFER.

34. On August 18, 2023, HP requested to meet and confer with plaintiff's counsel concerning the inadequate discovery responses on a proximate date. **Exhibit F.**

35.   On August 24, 2023, the parties agreed to meet and confer August 28, 2023. **Exhibit G**.

36.   On August 25, 2023, HP identified the foregoing deficiencies in the plaintiffs' responses in respect of the plaintiffs' prior representation that they would be supplemented, and requested they be supplemented by August 30, 2023. **Exhibit H.**

37.   On August 28, 2023, the parties held the meet-and-confer by video conference for approximately 24 minutes. During the meet-and-confer, the plaintiff agreed to supplement the responses by September 11, 2023. HP stated that the supplementation was needed sooner so that the parties could timely review those responses in anticipation of the outstanding depositions and expert discovery due to close by October 31, 2023, to which plaintiffs objected. **Exhibit I.**

38.   On August 30, 2023, HP again stated that it required the supplemental responses, and would be constrained to seek the Court's intervention on September 1, 2023 if the supplemental responses were not provided. Exhibit I.

39.   To date, the responses have not been supplemented.

## IV. RULE 37 EXPENSES AND ATTORNEYS' FEES IN FAVOR OF HP ARE WARRANTED.

40.   Counsel notes that it would normally not seek sanctions in a motion like this but given plaintiffs' pending request for costs and fees, HP likewise requests that the Court award the attorneys' fees and expenses incurred by HP for this cross-motion as provided for in Fed. R. Civ. P. 37.

41.     Pursuant to Fed. R. Civ. P. 37(a)(1) and Local Rule 7(d)(3), HP has made a good
faith effort to resolve this dispute prior to filing this cross-motion as set forth
above.  Plaintiffs, on the other hand, have failed to make good faith efforts to
respond to HP's discovery requests and have obstructed an orderly and timely
discovery process in this case.  This course of conduct has forced HP to file the
present motion.

**WHEREFORE**, HP respectfully requests an Order:

   A. Pursuant to Fed. R. Civ. P. 37(a)(1)(B) compelling plaintiffs to
   provide complete answers to HP's Interrogatories;

   B. Pursuant to Fed. R. Civ. P. 37(a)(1)(B) compelling plaintiffs to
   provide complete responses to HP's Requests for Production;

   C. Pursuant to Fed. R. Civ. P. 37(a)(5)(A) compelling plaintiffs to
   pay HP's reasonable expenses incurred in making this motion,
   including attorneys' fees; and

   D. For such other and further relief as to this Court seems just and
   proper.

DATED: September 7, 2023

Jaclyn S. Wanemaker, Esq.
SMITH SOVIK KENDRICK & SUGNET, PC
*Attorneys for Defendant HP, Inc.*
6245 Sheridan Drive, Suite 218
Williamsville, New York 14221
Tel.: (315) 474-2911
jwanemaker@smithsovik.com