# EXHIBIT B

## Teresa Zukoski

| | |
|---|---|
| **From:** | Steve Schwarz |
| **Sent:** | Friday, January 26, 2024 1:58 PM |
| **To:** | Benjamin Levites |
| **Cc:** | Jaclyn Wanemaker; Christopher Betke; Josh M. Mankoff |
| **Subject:** | RE: [External] Marcellin and Estate of Hollowell v. HP |

I look forward to receiving your motion on or before Tuesday and we can let the Court determine who is correct.



**Stephen G. Schwarz, Esq.**
*Partner*

1882 South Winton Road, Suite 1
Rochester, NY 14618
Direct :   (585) 399-6035
Phone :  (585) 325-5150
Fax :       (585) 325-3285

sschwarz@faraci.com
www.faraci.com



Confidentiality Statement: This message (including any attachments) is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information that is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from distributing or copying this information (other than to the intended recipient).



**From:** Benjamin Levites <blevites@coughlinbetke.com>
**Sent:** Friday, January 26, 2024 1:54 PM
**To:** Steve Schwarz <sschwarz@faraci.com>
**Cc:** Jaclyn Wanemaker <jwanemaker@smithsovik.com>; Christopher Betke <cbetke@coughlinbetke.com>; Josh M. Mankoff <jmm@faraci.com>
**Subject:** Re: [External] Marcellin and Estate of Hollowell v. HP

[EXTERNAL: This email originated from outside of the organization.]

Dear Steve:

1

Since you are referring to the deposition transcript of Mr. Atkinson (a/k/a "Mr. Alexander"), please direct our attention to where, in the entire 30(b)(6) deposition that you asked this purported "important" question: "why did HP not provide notice to current laptop users of the dangers posed by counterfeit replacement batteries…." ?  Mr. Atkinson, whose testimony binds HP, testified that HP was aware of the problem as of 2016-2017, and also that HP did not provide notice to prior purchasers. That is, he testified concerning this issue at length on the pages subsequent to those you cited.

If, as you now suddenly contend, this is "important evidence", why didn't you simply ask the designated witness that question? You did not ask it.  Now, you are seeking the deposition of a random HP employee whose name just happened to come up at this deposition to appear for a deposition to get this "important" evidence.  If it was truly so important,  you should have asked the 30(b)(6) witness produced by HP to testify about it.

From our perspective, this smacks of sending us on yet another wild goose chase similar to causing us to spend countless hours of attorney and HP time to simply demonstrate to you when *your client* bought her computer.  The whole point of a 30(b)(6) deposition is to avoid this sort of needless deposition stacking.  I do not think it behooves us to go to the Court with you arguing that you failed to ask an "important question" at the HP deposition when the witness was testifying about that subject. That is not a record that will look good.  If you want to send us an interrogatory that asks the question you did not ask, we will respond to it as we have with the most recent interrogatories, responses to which were served this week.  Otherwise, we will seek the protective order by Tuesday. Thank you.

Kind regards,

Ben

**BENJAMIN H. LEVITES**
ASSOCIATE
*Admitted in CT and NY
212-653-0380
blevites@coughlinbetke.com

**COUGHLIN∘BETKE LLP**

Massachusetts | Connecticut | New Hampshire | New York | Rhode Island
Main Office
175 Federal Street  |  Boston, MA 02110
T. (617) 988-8050  |  F. (617) 988-8005

Confidential Transmission
The information contained in this electronic mail is intended for the named recipients only. It may contain privileged and confidential material. Any other distribution, copying or disclosure is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone and delete the original transmission without making a copy.

On Jan 26, 2024, at 11:00 AM, Steve Schwarz <sschwarz@faraci.com> wrote:

Ben

We have had two meet and confer conferences, but I disagree with your summary of what was discussed. At both conferences I explained in detail that we believe Mr. Pipho was likely to have important evidence on the decision-making at HP as to whether to provide notice to current laptop users of the dangers posed by the counterfeit replacement batteries lacking important safety features that HP knew were being sold to HP customers. Mr. Atkinson testified he discussed the problem with Mr. Pipho. Mr. Atkinson did not know what Mr. Pipho did with that information. Previous to our meet and confer conferences I provided the specific pages of Mr. Atkinson's testimony in which he said he discussed these issues with Mr. Pipho and was not aware of what else was done within the company about this safety concern. (See Atkinson deposition pages 98-

Of particular import are the following questions and answers:

```
98:13  Q    So, other than your efforts to study
98:14  unauthorized battery packs and whatever functionality
98:15  they had, that you did in litigation, you are not
98:16  aware of any similar process going on within HP where
98:17  unauthorized battery packs were being studied for
98:18  purposes of, say, safety and warning consumers not to
98:19  use these products?
98:20       A    Well, I am not aware of any other study
98:21  with an HP for these other -- for these other battery
98:22  packs.
98:23       Q    Right.
98:24            Have you --
98:25            Did you inquire as to whether --
99:1             Did you take any action in preparation
99:2   for today to find out whether there was some other
99:3   unit within HP that was doing that function outside
99:4   of purely for litigation?
99:5             MR. BETKE:  Or would you know as part
99:6        of your work?
99:7        A    I am not aware of any other study
99:8   for -- any other study on unauthorized battery packs.
99:9        Q    But my question is did you inquire of
99:10  anyone else in the company to find out if there is
99:11  something you are unaware of that is actually
99:12  occurring with these unauthorized battery packs are
99:13  being studied for purposes other than litigation?
99:14            Did you inquire of anyone about that
99:15  topic?
99:16       A    No.  I've had discussions with other
99:17  people on this, but I am not aware of any other
```

99:18  activity that actually -- to actually analyze these
99:19  battery packs.
99:20       Q    When you say you've had discussions,
99:21  again, I don't want to know any discussions you had
99:22  with lawyers, but, in other words, have you had any
99:23  discussions within the company, generally outside of
99:24  litigation process, about the potential hazards
99:25  associated with using these unauthorized battery
100:1  packs because they lack certain safety features?
100:2       A    Yes.
100:3       Q    And when did you have those
100:4  conversations and with whom again outside of
100:5  litigation context?
100:6       A    The question about how we can -- about
100:7  what me might be able to do to discourage use of
100:8  third-party batteries.
100:9       Q    Yes.
100:10           So, that's what I understood the
100:11 concept was, but my question is, who did you discuss
100:12 that with and when?
100:13      A    I talked to a few people over the last
100:14 four years on this.  Last four years on this.
100:15      Q    So, we have when.
100:16           Who were the few people that you
100:17 talked to?
100:18      A    Another person who -- I have to name a
100:19 name, David Pipho.
100:20      Q    Do you know how to spell that, please?
100:21      A    P-I-P-H-O.
100:22      Q    Where in the HP system is Mr. Pipho
100:23 housed?
100:24      A    He works in quality.  HP quality group.
100:25      Q    Where is that located?
101:1       A    In Houston.
101:2       Q    Can you recall the name of anyone else
101:3  that you had this conversation with?
101:4       A    Yes.  With -- no.  I am trying to
101:5  remember specifically.  I can't remember a name
101:6  that -- I am trying to remember a specific
101:7  conversation that I had with someone.  But at least I
101:8  am trying to remember specific discussion.
101:9       Q    You are having trouble remembering who
101:10 you talked to?
101:11      A    Yeah.  I am trying to put in context --
101:12 I am trying to remember a specific conversation and
101:13 how -- and what exactly we talked about.
101:14      Q    So, the only name that you can give me
101:15 is Mr. Pipho?
101:16      A    Yes.  Right now, yes.
101:17      Q    With regard to your discussions with
101:18 Mr. Pipho, do you know if any action was taken by HP
101:19 to further those discussions after you had the

4

101:20  discussion with Mr. Pipho?
101:21        A    I don't know if there -- I don't know
101:22  if there is anymore further action.  No, I don't
101:23  know.

(Atkinson, 98:13-101:23, 8/2/2023)

As you are aware, F.R.Civ.P 26(b)(1) provides that "[p]arties may obtain  discovery regarding any nonprivileged matter that is relevant to the party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to the relevant information, the parties resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs the likely benefit."  None of these factors weigh in favor of HP refusing to produce Mr. Pipho for a deposition:

1.  We have conducted only one deposition of an HP witness;
2.  This is a death case;
3.  The amount in controversy is substantial;
4.  Producing Mr. Pipho for a deposition virtually is not in any way burdensome to HP;
5.  HP has the resources to produce more than one witness for deposition;
6.  The post-manufacture duty to warn is the central claim in this case and HP's decision not to notify existing customers is obviously relevant to the claims made, a subject matter Mr. Atkinson indicated was discussed with Mr. Pipho;
7.  The burden or expense of producing Mr. Pipho does not outweigh the likely benefit.

If you don't file your motion by Tuesday of next week, we will file one to compel Mr. Pipho's testimony.  The deposition notice for Mr. Pipho was served  on September 13, 2023.

Steve

5

**Stephen G. Schwarz, Esq.**
*Partner*

1882 South Winton Road, Suite 1
Rochester, NY  14618
Direct :    (585) 399-6035
Phone :   (585) 325-5150
Fax :       (585) 325-3285

sschwarz@faraci.com
www.faraci.com

&lt;image003.png&gt;
&lt;image004.png&gt;
&lt;image005.png&gt;
&lt;image006.png&gt;
&lt;image007.png&gt;

&lt;image002.png&gt;

Confidentiality Statement: This message (including any attachments) is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information that is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from distributing or copying this information (other than to the intended recipient).

&lt;image008.png&gt;

**From:** Benjamin Levites &lt;blevites@coughlinbetke.com&gt;
**Sent:** Thursday, January 25, 2024 8:06 PM

6

**To:** Steve Schwarz <sschwarz@faraci.com>
**Cc:** Jaclyn Wanemaker <jwanemaker@smithsovik.com>; Christopher Betke <cbetke@coughlinbetke.com>
**Subject:** Re: [External] Marcellin and Estate of Hollowell v. HP

[EXTERNAL: This email originated from outside of the organization.]

Dear Steve:

We have had two meet and confer calls and, to date, you have not articulated any basis for the deposition of Mr. Pipho other than the fact that his name came up.  Indeed, his name came up at the deposition of HP (Lee Atkinson) in which the HP designated witness answered virtually every question and happened to mention a conversation he had with Mr. Pipho in 2019-2023.  Thus, his name came up in the context of conversations that took place at least eight years after your client purchased her computer.   HP testified that it was aware of the issue of counterfeit unauthorized battery packs from 2016-2017 and that the pop-up counterfeit battery alert was introduced to new HP computers in 2019.   HP testified there was no communication from HP on these aftermarket batteries to previous customers.  During our meet-and-confer you have stated that you were not seeking the deposition of David Pipho as a designee of the corporation, but rather a fact witness. However, you have not articulated any category of fact that he might be witness to that could be germane to this case.   This makes the proposed deposition of Mr. Pipho not just a fishing expedition but one in a place where no fish have even been identified.  Accordingly, we are going to seek a protective order. If you think I am mistaken and there is a relevant category of inquiry, please let me know.

Kind regards,
Ben

# BENJAMIN H. LEVITES
ASSOCIATE
*Admitted in CT and NY
212-653-0380
blevites@coughlinbetke.com
COUGHLIN◦BETKE LLP
Massachusetts | Connecticut | New Hampshire | New York | Rhode Island
Main Office
175 Federal Street  |  Boston, MA 02110
T. (617) 988-8050  |  F. (617) 988-8005

<~WRD0000.jpg>

<~WRD0000.jpg>

Confidential Transmission
The information contained in this electronic mail is intended for the named recipients only.  It may contain privileged and confidential material.  Any other distribution, copying or disclosure is strictly prohibited.  If you have received this transmission in error, please notify us immediately by telephone and delete the original transmission without making a copy.

On Jan 24, 2024, at 4:49 PM, Steve Schwarz <sschwarz@faraci.com> wrote:

Ben and Jackie

If you don't provide dates for the deposition of Mr. Pipho or file a motion for a protective order by Friday I will have to file a motion to compel next week.  Please let me know your plan.

Thank you.

Steve

<image002.png>

**Stephen G. Schwarz, Esq.**
*Partner*

1882 South Winton Road, Suite 1
Rochester, NY  14618
Direct :   (585) 399-6035
Phone :  (585) 325-5150
Fax :      (585) 325-3285

sschwarz@faraci.com
**www.faraci.com**

<image003.png><image004.png><image005.png><image006.png><image007.png>

Confidentiality Statement: This message (including any attachments) is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information that is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from distributing or copying this information (other than to the intended recipient).

<image008.png>

8