Page 1

1
2    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF NEW YORK
3    --------------------------------------X
     CAROL S. MARCELLIN, Individually      :
4    and as Co-Administrator of the
     Estate of Charles E. Hollowell,       :
5    Deceased, and JESSICA                      1:2021
     HOLLOWELL-McKAY, as Co-Administrator  : cv00704
6    of the Estate or Charles E. Hollowell,
     Deceased.                             :

7
                    PLAINTIFFS,            :
8
            -against-                      :
9
     HP, INC., and                         :
10   STAPLES, INC.,
                                           :
11                  DEFENDANTS.
     --------------------------------------X
12                  July 9, 2024
                    10:05 a.m.
13
14
15        Examination Before Trial of the Plaintiff,
     CAROL S. MARCELLIN, in the above-captioned
16   matter, held via Zoom Video, before Howard
     Breshin, a Notary Public of the State of New
17   York.
18
19
20
21
22
23
24
25     Job No. CS6792515

```
 1                    MARCELLIN
 2
    A P P E A R A N C E S:
 3  FARACI LANGE, LLP
         Attorneys for Plaintiff
 4       1882 South Winton Road - Suite 1
         Rochester, New York 14618
 5  BY: STEPHEN G. SCHWARZ, ESQ.
 6  COUGHLIN & BETKE
         Attorneys for Defendant
 7       HP INC.
         175 Federal State 950
 8       Boston, MA 02110
    BY: BENJAMIN LEVITES, ESQ.
 9       617 988-8050
10  PILLINGER MILLER TARALLO, LLP
         Attorneys for Defendant
11       STAPLES INC.
         126 North Salina Street - Suite 13202
12       Syracuse, New York 13202
    BY: MARIA T. MASTRIANO, ESQ.
13       315 471-6166
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1              MARCELLIN
2         221.  UNIFORM RULES FOR THE
       CONDUCT OF DEPOSITIONS.
3           221.1 Objections in general.  No
       objections shall be made at a
4       deposition except those which, pursuant
       to subdivision (b), (c) or (d) of Rule
5       3115 of the Civil Practice Law and
       Rules, would be waived if not
6       interposed, and except in compliance
       with subdivision (e) of such rule.
7           All objections made at a
       deposition shall be noted by the
8       officer before whom the deposition is
       taken, and the answer shall be given
9       and the deposition shall proceed
       subject to the objections and to the
10      right of a person to apply for
       appropriate relief pursuant to Article
11      31 of the CPLR.
           (b) Speaking objections
12      restricted.  Every objection raised
       during a deposition shall be stated
13      succinctly and deemed so as not to
       suggest an answer to the deponent and,
14      at the request of the questioning
       attorney, include a clear statement as
15      to any defect in form or the basis or
       error or irregularity.  Except to the
16      extent permitted by CPLR Rule 3115 or
       by this rule, during the course of the
17      examination persons in attendance shall
       not make statements or comments that
18      interfere with the questioning.
           221.2 Refusal to answer when an
19      objection is made.
           A deponent shall answer all
20      questions at a deposition, except (i)
       to preserve a privilege or right of
21      confidentiality, (ii) to enforce a
       limitation set forth in an order of the
22      court, or (iii) when the question is
       plainly improper and would, if
23      answered, cause significant prejudice
       to any person.
24          An attorney shall not direct a
        deponent not to answer except as
25      provided in CPLR Rule 3115 or this
```

Page 4

MARCELLIN

1
2    direction not to answer shall be
     accompanied by a succinct and clear
3    statement of the basis therefor.  If
     the deponent does not answer a
4    question, the examining party shall
     have the right to complete the
5    remainder of the deposition.
         221.3  Communication with the
6    deponent.
         An attorney shall not interrupt
7    the deposition for the purpose of
     communicating with the deponent unless
8    all parties consent that the
     communication is made for the purposes
9    of determining whether the question
     should not be answered on the grounds
10   set forth in Section 221.2 of these
     rules and, in such event, the reason
11   for the communication shall be stated
     for the record succinctly and clearly.
12       IT IS FURTHER STIPULATED AND
     AGREED that the transcript may be
13   signed before any Notary Public with
     the same force and effect as if signed
14   by a clerk or a Judge of the court.
         IT IS FURTHER STIPULATED AND
15   AGREED that the examination before
     trial may be utilized for all purposes
16   as provided by the CPLR.
         IT IS FURTHER STIPULATED AND
17   AGREED that all rights provided to all
     parties by the CPLR cannot be deemed
18   waived and the appropriate sections of
     the CPLR shall be controlling with
19   respect thereto.
         IT IS FURTHER STIPULATED AND
20   AGREED by and between the attorneys for
     the respective parties hereto that a
21   copy of this examination shall be
     furnished, without charge, to the
22   attorneys representing the witness
     testifying herein.
23
24
25

Page 5

```
 1                    MARCELLIN
 2   C A R O L   M A R C E L L I N,  the Plaintiff
 3   herein, called on behalf of the Defendants,
 4   having been first duly sworn, was examined and
 5   testified as follows:
 6                    THE COURT REPORTER:  Can I have
 7              your name and address for the record.
 8                    THE WITNESS:  Carol Sharon
 9              Marcellin, 192 Bells Brook Road in
10              Ceres, New York, 11721.
11   EXAMINATION BY
12   MR. LEVITES:
13        Q.   Ms. Marcellin, my name is Benjamin
14   Levites and I represent HP Inc. in this case and
15   as with your previous deposition, I am here to
16   ask you some questions about your lawsuit against
17   HP and Staples concerning a fire on January 24th,
18   2020.
19                    With us today we have counsel for
20   Staples, Maria Mastriano, the court reporter, Mr.
21   Breshin, and your attorney, Mr. Schwarz, and
22   because your last deposition was a little while
23   ago I am going to go through some of the
24   procedure again if that's okay with you.
25        A.   All right.
```

```
 1                    MARCELLIN
 2        Q.    So the goal of today is to produce a
 3   written transcript that reads question answer
 4   question answer and so on, okay?
 5        A.    Okay.
 6        Q.    And in normal conversation I would
 7   appreciate when you anticipate the rest of my
 8   question, so we can get that transcript that
 9   reads question and answer, you need to allow me
10   to finish my question before you give your
11   answer, so if I hold my hand up while I am asking
12   a question I am not trying to be rude, I just
13   want you to know I am still asking questions,
14   okay?
15        A.    That's okay.
16        Q.    And equally if you are giving an
17   answer, I will make every effort not to begin
18   another question before you are finished, and if
19   I do please let me know you aren't finished,
20   okay?
21        A.    Okay.
22        Q.    We'll also need you to give verbal
23   answers to please say yes or no instead of
24   nodding, shaking your head.  Similarly the
25   transcript won't capture your tone so answers
```

1                         MARCELLIN
2    like ah-hah or uh-huh are not acceptable, is that
3    all right?
4         A.    Yes, that's all right.
5         Q.    Sometimes I might ask a question that
6    is confusing.  You can always tell me you don't
7    understand a question and you would like me to
8    repeat it or rephrase it, but if you do not tell
9    me that you don't understand the question and you
10   proceed to answer it it will be presumed that you
11   did understand the question, is that okay?
12        A.    It's okay.
13        Q.    We can take a break during the
14   deposition at any time or for any reason.  My
15   only request is, if I just asked you a question
16   you answer before we take a break, okay?
17        A.    Okay.
18        Q.    Can you review the documents I display
19   on the screen here?
20              MR. SCHWARZ:  Can she do that?
21              MR. LEVITES:  Sometimes people are
22         on a tiny cell phone.
23              MR. SCHWARZ:  She can review
24         documents on the screen.
25        Q.    Can you review the documents on the

1                    MARCELLIN

2    screen, Ms. Marcellin?

3         A.    Yes.

4         Q.    Just let me know if you need a

5    magnifier, I will be happy to do that.

6               I am going to ask you some

7    questions today about the notebook computer that

8    is the subject of your lawsuit, the HP Pavilion

9    DV6 laptop that you purchased from Staples, so

10   when I say HP notebook we are talking about the

11   subject notebook that you alleged caused the

12   fire, if that's okay with you?

13        A.    Okay.

14        Q.    Concerning the HP notebook you never

15   changed the battery in that notebook, right?

16        A.    Correct, to the best of my

17   recollection.

18        Q.    And you never had it serviced or

19   modified?

20        A.    No, never.

21        Q.    And you never had anyone else change

22   the battery?

23        A.    No, not at all.

24        Q.    And you never had anyone else service

25   it or modify it?

1                    MARCELLIN

2         A.    No, not at all.

3         Q.    Okay.  And after you purchased it do

4    you have any reason to believe that anyone

5    replaced the battery?

6         A.    No, I do not.

7         Q.    So you have no idea who would have

8    changed the battery if the battery was not

9    original, right?

10        A.    Correct.

11        Q.    Okay.  So now, Ms. Marcellin, I am

12   going to ask you some questions about your 90s

13   Compaq laptop.  So you didn't replace the battery

14   in your HP notebook but you do recall buying a

15   replacement battery for your Compaq online at

16   some point before the fire but you don't know

17   when, right?

18        A.    Not exactly, early 90s, I would say,

19   when I purchased it.

20        Q.    You do recall buying a replacement

21   battery for that Compaq online before the fire?

22        A.    Yes.

23        Q.    And you put that replacement battery

24   in the Compaq, right?

25        A.    Yes, I did.

1                        MARCELLIN

2          Q.     And the Compaq was in the closet at

3     the time of the fire?

4          A.     Yes, it was.

5          Q.     And that had the replacement battery

6     that you bought online in it?

7          A.     Yes.

8          Q.     So after the fire it would have been

9     in the closet, right?

10         A.     Yes.

11         Q.     You didn't remove it from the closet?

12         A.     No.

13         Q.     And if it was there at the time of the

14    fire it would have been in the closet after the

15    fire, right?

16         A.     Yes.

17         Q.     Okay.  So now I am going to put

18    Exhibit A up if the computer cooperates here.

19    Let's see.  Can you see Exhibit A there?

20         A.     You would have to enlarge that.

21         Q.     Okay.  Let's see if I can enlarge

22    this.  Is that bigger now?

23                    MR. SCHWARZ:  That's better.

24         A.     I can't.

25         Q.     Pardon?  Can you see it?

1                    MARCELLIN

2       A.    I can see the margin, the Exhibit A

3   posting on there.

4       Q.    Okay, great.

5       A.    None of the information.

6       Q.    Okay, yes.  I am going to go to the

7   second page now.  So this is your State of New

8   York standard fire claim form and do you

9   recognize this form?

10      A.    Yes, I do.

11      Q.    Okay, and is that your signature on

12  page 1 under the box stating that "Any statement

13  of claim containing any materially false

14  insurance information is a fraudulent insurance

15  act?"

16      A.    Yes, I see that.  That is my

17  signature.

18      Q.    And is this your handwriting on the

19  form?

20      A.    Yes.

21      Q.    And this form was in fact true when

22  you submitted it?

23      A.    Excuse me, can you repeat?

24      Q.    And this form was truthful when you

25  submitted it?

1                    MARCELLIN

2        A.    Yes.

3        Q.    And you intended to tell the truth

4   when you submitted the form, right?

5        A.    Yes.

6        Q.    This was on February 3rd, 2020?

7        A.    Well, according to what I see on the

8   document, yes.

9        Q.    Okay.  So it would have been 10 days

10  after the fire on January 24th?

11       A.    Yes, I guess that would be accurate.

12       Q.    Okay.  And you were trying to submit a

13  truthful claim when you filled out this form,

14  right?

15       A.    Oh definitely, yes.

16       Q.    Okay.  I am going to turn to the

17  contents evaluation here on the first page here,

18  and if you look here on page one of the contents

19  evaluation form you will see on number 13 it

20  identifies an HP computer that was purchased from

21  Staples, do you see that?

22       A.    Yes, I do.

23       Q.    And that was purchased in 2011?

24       A.    To the best of my recollection, yes.

25       Q.    And that's the computer you alleged

Page 13

```
 1                     MARCELLIN
 2    caused the fire, right?
 3         A.    Yes.
 4         Q.    So as of February 3rd, 2020 when you
 5    filled out this form you were aware that you
 6    purchased the HP notebook in 2011 from Staples?
 7         A.    Yes.
 8         Q.    And it was eight or so years old at
 9    the time of the fire as you indicated here?
10         A.    It was what?
11         Q.    It was eight or so years old at the
12    time of the fire as you indicated here?
13         A.    Yes.
14         Q.    Okay.  So is it your testimony that in
15    those eight years you never replaced the battery?
16         A.    That's correct.
17         Q.    Okay.  And, Ms. Marcellin, you
18    purchased this HP notebook as a floor model, is
19    that correct?
20         A.    Yes.
21         Q.    And it didn't have a box?
22         A.    Correct.
23         Q.    It had no warnings?
24         A.    No.
25         Q.    It had no manual?
```

1                    MARCELLIN
2        A.    Not to my recollection, no.
3        Q.    You only got the power cord?
4        A.    Correct.
5        Q.    But you did think it was new, right?
6        A.    At the time, yes.
7              MR. LEVITES:  Okay, I think that
8              concludes my questions, ms. Marcellin.
9              I am going to take a look at my notes
10             here.  I am going to turn it over to
11             Ms. Mastriano and your attorney Mr.
12             Schwarz who may also have some
13             additional questions.  Thank you.
14             THE WITNESS:  Thank you.
15   EXAMINATION BY
16   MS. MASTRIANO:
17       Q.    Can you hear me?
18       A.    Yes, I can.
19       Q.    Okay sorry, I was on mute.  Ms.
20   Marcellin, you may remember me, my name is Maria
21   Mastriano, I represent Staples in this matter and
22   I only have a couple of questions for you.
23             The first is, I want to follow up
24   on the something you said.  Counsel asked you if
25   this was a new computer when you bought it and

```
 1                    MARCELLIN
 2   you said you thought so at the time you purchased
 3   it.  Today, did you think it was a new computer
 4   when you bought it?
 5        A.    I have no way of actually knowing
 6   whether it was or not.  It was represented to me
 7   as new when I purchased it.
 8        Q.    Okay.  And you had no reason to think
 9   otherwise that it wasn't a new computer when you
10   bought it?
11        A.    Correct.
12        Q.    And as of today you have no reason to
13   believe that it wasn't new when you bought it,
14   correct?
15        A.    Correct.
16              MS. MASTRIANO:  I think if you can
17         just give me two minutes, if we can go
18         off the record because counsel asked
19         almost all the questions I had to ask
20         you so I want to see what I have left.
21         Can we take a two minute break so you
22         don't have to watch me do that process?
23              THE WITNESS:  Certainly.
24              (Recess.)
25        Q.    I am going to go back to something
```

1                    MARCELLIN

2    counsel previously asked you.

3              You said you bought a floor model

4    for the subject laptop, is that correct?

5         A.    Yes.

6         Q.    Did you get a discount on the laptop,

7    do you remember?

8         A.    No, there was no mention of a discount

9    or a sales price or anything like that.  I just

10   assumed it was a new laptop.

11        Q.    Do you have a specific memory of

12   buying this laptop at Staples, the subject

13   laptop?

14        A.    Vaguely now, but yes.

15        Q.    What I am wondering, I know there was

16   a, you know, there was some inconsistencies with

17   the purchase date and so forth.  I am wondering,

18   you bought multiple laptops.  You bought a

19   laptop, the subject laptop and the Compaq laptop,

20   correct?

21        A.    The Compaq was much earlier, in the

22   early 90s, as I recall.

23        Q.    Then you bought a desktop, is that

24   correct as well?

25        A.    Yes, I did and I don't recall the date

```
 1                     MARCELLIN
 2    on that but it was prior to the laptop.
 3         Q.    Okay.  And then you bought a laptop in
 4    2019, is that correct?
 5         A.    Yes.
 6         Q.    Okay.  What I am wondering is, do you
 7    have a specific recollection that you bought the
 8    subject laptop as a floor model versus those
 9    other computers that we just talked about, could
10    it have been one of the other computers you
11    bought as a floor model?
12         A.    No.
13         Q.    And how do you know that?
14         A.    Actually the case on the computers
15    were a totally different color.  One was a much
16    smaller unit than the one I purchased, I believe.
17    At that time the subject laptop was I think a 17
18    inch which was bigger than what I had before.  I
19    do recall the process of purchasing it to a
20    degree.
21         Q.    Did you say it had a case on it?
22         A.    Well, just the case that is built onto
23    it, you know.
24         Q.    So you are saying the actual computer
25    or are you saying a carrying case?
```

Page 18

1                     MARCELLIN

2          A.    No, only a carrying case, the actual

3    computer metal case.

4          Q.    Okay.  Did you ever ask for-- you said

5    it was a floor model.  Did you ever ask for the

6    manuals or for a box to carry it out in?

7          A.    No.  I used a cart to take it to my

8    car.

9          Q.    Did you ever ask for a mouse or a

10   mouse pad or anything like that?

11         A.    I know I didn't ask but I think that

12   was part of the equipment that came with it.

13         Q.    Okay.  So you think when you purchased

14   it it had a power cord, correct?

15         A.    Yes, a power cord and a mouse.

16         Q.    Ms. Marcellin, was the subject laptop

17   solely for your use?

18         A.    Yes.

19         Q.    Do you ever remember anybody else

20   using that computer?

21         A.    No, not at all.

22         Q.    I think you already said this.  From

23   the time_-- let me check.  I want to make sure I

24   got your testimony correct.

25                   From the time that you bought it

Page 19

1                          MARCELLIN
2      in February or March of 2011 until the date of
3      the fire, had you ever replaced the battery in
4      the subject laptop?
5            A.    No, I did not.
6            Q.    From the time that you bought the
7      laptop until the date of the fire did you ever
8      have Staples perform any maintenance or repair on
9      that laptop?
10           A.    No, I did not.
11           Q.    From the time you bought it, the
12     subject laptop until the date of the fire did you
13     ever bring it in to Staples for any type of
14     alteration, service, anything?  Did you ever
15     bring that computer back to Staples for them to
16     service it in any way?
17           A.    No, I did not.
18           Q.    Do you remember on the subject laptop
19     how you would remove the battery, do you know?
20           A.    I do not.
21           Q.    Do you know if it had screws that you
22     had to unscrew it or if it was one that would pop
23     out and you can pop in another one?
24           A.    It definitely didn't have the pop-out
25     like the Compaq did.

1                    MARCELLIN

2        Q.    How do you know that?  How do you

3    remember that?

4        A.    Well, you pick your laptop up when you

5    are traveling with it at any time and obviously

6    you can see the bottom of the laptop, you know,

7    from toting it around, and the Compaq of course I

8    found it very simple when I turned that one over

9    that it was very much like replacing the battery

10   in your TV remote.

11       Q.    Okay.  Did you ever turn over the

12   subject laptop to take a look at how you could

13   replace the battery even if you didn't?  Did you

14   ever look to see how you could?

15       A.    No, never had that in mind.  It wasn't

16   functioning as well as it should have at the time

17   so no, I would not have gone to that extreme.

18              MS. MASTRIANO:  Thank you, Ms.

19          Marcellin, I don't think I have any

20          other questions.  I don't know if

21          counsel has.

22              MR. SCHWARZ:  I have no questions.

23              THE COURT REPORTER:  Maria, I

24          assume you are ordering the transcript

25          as well?

1                    MARCELLIN

2          MS. MASTRIANO:  Yes, please.

3          (Time noted: 10:25 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 22

```
 1   JURAT
 2   STATE OF NEW YORK          )
                                ss:
 3   COUNTY OF WESTCHESTER      )
 4              I, Carol Marcellin, hereby certify
            that having been first duly sworn to
 5          testify to the truth, gave the above
            deposition, which was recorded
 6          stenographically and reduced to this
            original transcript.
 7              I FURTHER CERTIFY that the
            foregoing transcript is a true and
 8          correct transcript of the testimony
            given by me at the time and place
 9          specified hereinbefore.
                I FURTHER CERTIFY that any
10          corrections or changes to this
            testimony have been made by me on the
11          Correction Sheet, which has also been
            signed by me before a Notary Public.
12
                                _____
13
     Subscribed and sworn to before me
14   this      day of            20
15   NOTARY PUBLIC
16
17
18
19
20
21
22
23
24
25      Job No. CS6792515
```

Page 23

1                              INDEX

2                              INDEX

    EXAMINATION BY MR. LEVITES                          5

3   EXAMINATION BY MS. MASTRIANO                       14

4

    EXHIBIT NO.     DESCRIPTION                       PAGE

5   N/A

6   DATA REQUESTED

    N/A

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

```
 1                    CERTIFICATION

 2


 3    STATE OF NEW YORK     )

 4                          )  ss.

 5    COUNTY OF WESTCHESTER )

 6             I, HOWARD BRESHIN, a Court Reporter

 7    and Notary Public within and for the State of New

 8    York, do hereby certify:

 9             That I reported the proceedings that

10    are hereinbefore set forth, and that such

11    transcript is a true and accurate record of said

12    proceedings.

13             I further certify that I am not

14    related to any of the parties to this action by

15    blood or marriage, and that I am in no way

16    interested in the outcome of this matter.

17             IN WITNESS WHEREOF, I have hereunto

18    set my hand.

19

20

21                  HOWARD BRESHIN,

22                  COURT REPORTER

23

24

25
```

**&**

**&**  2:6

**0**

**02110**  2:8

**1**

**1**  2:4 11:12
**10**  12:9
**10:05**  1:12
**10:25**  21:3
**11721**  5:10
**126**  2:11
**13**  12:19
**13202**  2:11,12
**14**  23:3
**14618**  2:4
**17**  17:17
**175**  2:7
**1882**  2:4
**192**  5:9

**2**

**20**  22:14
**2011**  12:23
 13:6 19:2
**2019**  17:4
**2020**  5:18 12:6
 13:4
**2024**  1:12
**221**  3:2
**221.1**  3:3
**221.2**  3:18 4:10
**221.3**  4:5
**24695**  24:20
**24th**  5:17 12:10

**3**

**31**  3:11
**3115**  3:5,16,25
**315**  2:13
**3rd**  12:6 13:4

**4**

**471-6166**  2:13

**5**

**5**  23:2

**6**

**617**  2:9

**9**

**9**  1:12
**90s**  9:12,18
 16:22
**950**  2:7
**988-8050**  2:9

**a**

**a.m.**  1:12 21:3
**above**  1:15
 22:5
**acceptable**  7:2
**accompanied**
 4:2
**accurate**  12:11
 24:11
**act**  11:15
**action**  24:14
**actual**  17:24
 18:2
**actually**  15:5
 17:14

**additional**
 14:13
**address**  5:7
**administrator**
 1:4,5
**ago**  5:23
**agreed**  4:12,15
 4:17,20
**ah**  7:2
**alleged**  8:11
 12:25
**allow**  6:9
**alteration**
 19:14
**answer**  3:8,13
 3:18,19,24 4:2
 4:3 6:3,4,9,11
 6:17 7:10,16
**answered**  3:23
 4:9
**answers**  6:23
 6:25
**anticipate**  6:7
**anybody**  18:19
**apply**  3:10
**appreciate**  6:7
**appropriate**
 3:10 4:18
**article**  3:10
**asked**  7:15
 14:24 15:18
 16:2
**asking**  6:11,13
**assume**  20:24

**assumed**  16:10
**attendance**
 3:17
**attorney**  3:14
 3:24 4:6 5:21
 14:11
**attorneys**  2:3,6
 2:10 4:20,22
**aware**  13:5

**b**

**b**  3:4,11
**back**  15:25
 19:15
**basis**  3:15 4:3
**battery**  8:15,22
 9:5,8,8,13,15
 9:21,23 10:5
 13:15 19:3,19
 20:9,13
**behalf**  5:3
**believe**  9:4
 15:13 17:16
**bells**  5:9
**benjamin**  2:8
 5:13
**best**  8:16 12:24
**betke**  2:6
**better**  10:23
**bigger**  10:22
 17:18
**blood**  24:15
**boston**  2:8
**bottom**  20:6
**bought**  10:6
 14:25 15:4,10

15:13 16:3,18
16:18,23 17:3
17:7,11 18:25
19:6,11
**box** 11:12
13:21 18:6
**break** 7:13,16
15:21
**breshin** 1:16
5:21 24:6,21
**bring** 19:13,15
**brook** 5:9
**built** 17:22
**buying** 9:14,20
16:12

### c

**c** 2:2 3:4 5:2,2
**called** 5:3
**captioned** 1:15
**capture** 6:25
**car** 18:8
**carol** 1:3,15 5:8
22:4
**carry** 18:6
**carrying** 17:25
18:2
**cart** 18:7
**case** 5:14 17:14
17:21,22,25
18:2,3
**cause** 3:23
**caused** 8:11
13:2
**cell** 7:22

**ceres** 5:10
**certainly** 15:23
**certification**
24:1
**certify** 22:4,7,9
24:8,13
**change** 8:21
**changed** 8:15
9:8
**changes** 22:10
**charge** 4:21
**charles** 1:4,6
**check** 18:23
**civil** 3:5
**claim** 11:8,13
12:13
**clear** 3:14 4:2
**clearly** 4:11
**clerk** 4:14
**closet** 10:2,9,11
10:14
**color** 17:15
**comments** 3:17
**communicating**
4:7
**communication**
4:5,8,11
**compaq** 9:13
9:15,21,24
10:2 16:19,21
19:25 20:7
**complete** 4:4
**compliance** 3:6
**computer** 8:7
10:18 12:20,25

14:25 15:3,9
17:24 18:3,20
19:15
**computers** 17:9
17:10,14
**concerning**
5:17 8:14
**concludes** 14:8
**conduct** 3:2
**confidentiality**
3:21
**confusing** 7:6
**consent** 4:8
**containing**
11:13
**claim** 12:17
12:18
**controlling**
4:18
**conversation**
6:6
**cooperates**
10:18
**copy** 4:21
**cord** 14:3 18:14
18:15
**correct** 8:16
9:10 13:16,19
13:22 14:4
15:11,14,15
16:4,20,24
17:4 18:14,24
22:8
**correction**
22:11

**corrections**
22:10
**coughlin** 2:6
**counsel** 5:19
14:24 15:18
16:2 20:21
**county** 22:3
24:5
**couple** 14:22
**course** 3:16
20:7
**court** 1:2 3:22
4:14 5:6,20
20:23 24:6,22
**cplr** 3:11,16,25
4:16,17,18
**cs6792515** 1:25
22:25
**cv00704** 1:5

### d

**d** 3:4
**data** 23:6
**date** 16:17,25
19:2,7,12
**day** 22:14
**days** 12:9
**deceased** 1:5,6
**deemed** 3:13
4:17
**defect** 3:15
**defendant** 2:6
2:10
**defendants**
1:11 5:3

**definitely** 12:15
19:24
**degree** 17:20
**deponent** 3:13
3:19,24 4:3,6,7
**deposition** 3:4
3:7,8,9,12,20
4:5,7 5:15,22
7:14 22:5
**depositions** 3:2
**description**
23:4
**desktop** 16:23
**determining**
4:9
**different** 17:15
**direct** 3:24
**direction** 4:2
**discount** 16:6,8
**display** 7:18
**district** 1:2,2
**document** 12:8
**documents**
7:18,24,25
**duly** 5:4 22:4
**dv6** 8:9

**e**

**e** 1:4,6 2:2,2 3:6
5:2
**earlier** 16:21
**early** 9:18
16:22
**effect** 4:13
**effort** 6:17

**eight** 13:8,11
13:15
**enforce** 3:21
**enlarge** 10:20
10:21
**equally** 6:16
**equipment**
18:12
**error** 3:15
**esq** 2:5,8,12
**estate** 1:4,6
**evaluation**
12:17,19
**event** 4:10
**exactly** 9:18
**examination**
1:15 3:17 4:15
4:21 5:11
14:15 23:2,3
**examined** 5:4
**examining** 4:4
**except** 3:4,6,15
3:20,24
**excuse** 11:23
**exhibit** 10:18
10:19 11:2
23:4
**extent** 3:16
**extreme** 20:17

**f**

**fact** 11:21
**false** 11:13
**faraci** 2:3
**february** 12:6
13:4 19:2

**federal** 2:7
**filled** 12:13
13:5
**finish** 6:10
**finished** 6:18
6:19
**fire** 5:17 8:12
9:16,21 10:3,8
10:14,15 11:8
12:10 13:2,9
13:12 19:3,7
19:12
**first** 5:4 12:17
14:23 22:4
**floor** 13:18
16:3 17:8,11
18:5
**follow** 14:23
**follows** 5:5
**force** 4:13
**foregoing** 22:7
**form** 3:15 11:8
11:9,19,21,24
12:4,13,19
13:5
**forth** 3:21 4:10
16:17 24:10
**found** 20:8
**fraudulent**
11:14
**functioning**
20:16
**furnished** 4:21
**further** 4:12,14
4:16,19 22:7,9

24:13

**g**

**g** 2:5
**general** 3:3
**give** 6:10,22
15:17
**given** 3:8 22:8
**giving** 6:16
**go** 5:23 11:6
15:17,25
**goal** 6:2
**going** 5:23 8:6
9:12 10:17
11:6 12:16
14:9,10 15:25
**great** 11:4
**grounds** 4:9
**guess** 12:11

**h**

**hah** 7:2
**hand** 6:11
24:18
**handwriting**
11:18
**happy** 8:5
**head** 6:24
**hear** 14:17
**held** 1:16
**hereinbefore**
22:9 24:10
**hereto** 4:20
**hereunto** 24:17
**hold** 6:11

**hollowell** 1:4,5
1:6
**howard** 1:16
24:6,21
**hp** 1:9 2:7 5:14
5:17 8:8,10,14
9:14 12:20
13:6,18
**huh** 7:2

**i**

**idea** 9:7
**identifies** 12:20
**ii** 3:21
**iii** 3:22
**improper** 3:22
**inch** 17:18
**include** 3:14
**inconsistencies**
16:16
**index** 23:1,2
**indicated** 13:9
13:12
**individually**
1:3
**information**
11:5,14
**insurance**
11:14,14
**intended** 12:3
**interested**
24:16
**interfere** 3:18
**interposed** 3:6
**interrupt** 4:6

**irregularity**
3:15

**j**

**january** 5:17
12:10
**jessica** 1:5
**job** 1:25 22:25
**judge** 4:14
**july** 1:12
**jurat** 22:1

**k**

**know** 6:13,19
8:4 9:16 16:15
16:16 17:13,23
18:11 19:19,21
20:2,6,20
**knowing** 15:5

**l**

**l** 5:2,2,2
**lange** 2:3
**laptop** 8:9 9:13
16:4,6,10,12,13
16:19,19,19
17:2,3,8,17
18:16 19:4,7,9
19:12,18 20:4
20:6,12
**laptops** 16:18
**law** 3:5
**lawsuit** 5:16
8:8
**left** 15:20
**levites** 2:8 5:12
5:14 7:21 14:7

23:2
**limitation** 3:21
**little** 5:22
**llp** 2:3,10
**look** 12:18 14:9
20:12,14

**m**

**m** 5:2
**ma** 2:8
**made** 3:3,7,19
4:8 22:10
**magnifier** 8:5
**maintenance**
19:8
**make** 3:17 6:17
18:23
**manual** 13:25
**manuals** 18:6
**marcellin** 1:3
1:15 2:1 3:1
4:1 5:1,9,13
6:1 7:1 8:1,2
9:1,11 10:1
11:1 12:1 13:1
13:17 14:1,8
14:20 15:1
16:1 17:1 18:1
18:16 19:1
20:1,19 21:1
22:4
**march** 19:2
**margin** 11:2
**maria** 2:12
5:20 14:20
20:23

**marriage** 24:15
**mastriano** 2:12
5:20 14:11,16
14:21 15:16
20:18 21:2
23:3
**materially**
11:13
**matter** 1:16
14:21 24:16
**mckay** 1:5
**memory** 16:11
**mention** 16:8
**metal** 18:3
**miller** 2:10
**mind** 20:15
**minute** 15:21
**minutes** 15:17
**model** 13:18
16:3 17:8,11
18:5
**modified** 8:19
**modify** 8:25
**mouse** 18:9,10
18:15
**multiple** 16:18
**mute** 14:19

**n**

**n** 2:2 5:2 23:5,6
**name** 5:7,13
14:20
**need** 6:9,22 8:4
**never** 8:14,18
8:20,21,24
13:15 20:15

**[new - recollection]**

**new**  1:2,16 2:4
2:12 5:10 11:7
14:5,25 15:3,7
15:9,13 16:10
22:2 24:3,7
**nodding**  6:24
**normal**  6:6
**north**  2:11
**notary**  1:16
4:13 22:11,15
24:7
**notebook**  8:7
8:10,11,14,15
9:14 13:6,18
**noted**  3:7 21:3
**notes**  14:9
**number**  12:19

**o**

**o**  5:2
**objection**  3:12
3:19
**objections**  3:3
3:3,7,9,11
**obviously**  20:5
**officer**  3:8
**oh**  12:15
**okay**  5:24 6:4,5
6:14,15,20,21
7:11,12,16,17
8:12,13 9:3,11
10:17,21 11:4
11:6,11 12:9
12:12,16 13:14
13:17 14:7,19
15:8 17:3,6

18:4,13 20:11
**old**  13:8,11
**online**  9:15,21
10:6
**order**  3:21
**ordering**  20:24
**original**  9:9
22:6
**outcome**  24:16

**p**

**p**  2:2,2
**pad**  18:10
**page**  11:7,12
12:17,18 23:4
**pardon**  10:25
**part**  18:12
**parties**  4:8,17
4:20 24:14
**party**  4:4
**pavilion**  8:8
**people**  7:21
**perform**  19:8
**permitted**  3:16
**person**  3:10,23
**persons**  3:17
**phone**  7:22
**pick**  20:4
**pillinger**  2:10
**place**  22:8
**plainly**  3:22
**plaintiff**  1:15
2:3 5:2
**plaintiffs**  1:7
**please**  6:19,23
21:2

**point**  9:16
**pop**  19:22,23
19:24
**posting**  11:3
**power**  14:3
18:14,15
**practice**  3:5
**prejudice**  3:23
**preserve**  3:20
**presumed**  7:10
**previous**  5:15
**previously**  16:2
**price**  16:9
**prior**  17:2
**privilege**  3:20
**procedure**  5:24
**proceed**  3:9
7:10
**proceedings**
24:9,12
**process**  15:22
17:19
**produce**  6:2
**provided**  3:25
4:16,17
**public**  1:16
4:13 22:11,15
24:7
**purchase**  16:17
**purchased**  8:9
9:3,19 12:20
12:23 13:6,18
15:2,7 17:16
18:13

**purchasing**
17:19
**purpose**  4:7
**purposes**  4:8
4:15
**pursuant**  3:4
3:10
**put**  9:23 10:17

**q**

**question**  3:22
4:4,9 6:3,4,8,9
6:10,12,18 7:5
7:7,9,11,15
**questioning**
3:14,18
**questions**  3:20
5:16 6:13 8:7
9:12 14:8,13
14:22 15:19
20:20,22

**r**

**r**  2:2 5:2,2
**raised**  3:12
**reads**  6:3,9
**reason**  4:10
7:14 9:4 15:8
15:12
**recall**  9:14,20
16:22,25 17:19
**recess**  15:24
**recognize**  11:9
**recollection**
8:17 12:24
14:2 17:7

| | | | |
|---|---|---|---|
| **record** 4:11 5:7 15:18 24:11 | **representing** 4:22 | **screws** 19:21 | 8:9 12:21 13:6 14:21 16:12 19:8,13,15 |
| **recorded** 22:5 | **request** 3:14 7:15 | **second** 11:7 | **state** 1:16 2:7 11:7 22:2 24:3 24:7 |
| **reduced** 22:6 | **requested** 23:6 | **section** 4:10 | |
| **refusal** 3:18 | **respect** 4:19 | **sections** 4:18 | |
| **related** 24:14 | **respective** 4:20 | **see** 10:19,19,21 10:25 11:2,16 12:7,19,21 15:20 20:6,14 | **stated** 3:12 4:11 |
| **relief** 3:10 | **rest** 6:7 | | **statement** 3:14 4:3 11:12 |
| **remainder** 4:5 | **restricted** 3:12 | | |
| **remember** 14:20 16:7 18:19 19:18 20:3 | **review** 7:18,23 7:25 | **service** 8:24 19:14,16 | **statements** 3:17 |
| | **right** 3:10,20 4:4 5:25 7:3,4 8:15 9:9,17,24 10:9,15 12:4 12:14 13:2 14:5 | **serviced** 8:18 | **states** 1:2 |
| | | **set** 3:21 4:10 24:10,18 | **stating** 11:12 |
| **remote** 20:10 | | **shaking** 6:24 | **stenographic...** 22:6 |
| **remove** 10:11 19:19 | | **sharon** 5:8 | **stephen** 2:5 |
| **repair** 19:8 | | **sheet** 22:11 | **stipulated** 4:12 4:14,16,19 |
| **repeat** 7:8 11:23 | **rights** 4:17 | **signature** 11:11 11:17 24:20 | **street** 2:11 |
| **rephrase** 7:8 | **road** 2:4 5:9 | **signed** 4:13,13 22:11 | **subdivision** 3:4 3:6 |
| **replace** 9:13 20:13 | **rochester** 2:4 | | |
| | **rude** 6:12 | **significant** 3:23 | **subject** 3:9 8:8 8:11 16:4,12 16:19 17:8,17 18:16 19:4,12 19:18 20:12 |
| **replaced** 9:5 13:15 19:3 | **rule** 3:4,6,16,16 3:25 | **similarly** 6:24 | |
| **replacement** 9:15,20,23 10:5 | **rules** 3:2,5 4:10 | **simple** 20:8 | |
| | **s** | **smaller** 17:16 | |
| | **s** 1:3,15 2:2 | **solely** 18:17 | **submit** 12:12 |
| **replacing** 20:9 | **sales** 16:9 | **sorry** 14:19 | **submitted** 11:22,25 12:4 |
| **reported** 24:9 | **salina** 2:11 | **south** 2:4 | |
| **reporter** 5:6,20 20:23 24:6,22 | **saying** 17:24,25 | **speaking** 3:11 | **subscribed** 22:13 |
| **represent** 5:14 14:21 | **schwarz** 2:5 5:21 7:20,23 10:23 14:12 20:22 | **specific** 16:11 17:7 | **succinct** 4:2 |
| **represented** 15:6 | | **specified** 22:9 | **succinctly** 3:13 4:11 |
| | **screen** 7:19,24 8:2 | **ss** 22:2 24:4 | |
| | | **standard** 11:8 | |
| | | **staples** 1:10 2:11 5:17,20 | |

**suggest** 3:13
**suite** 2:4,11
**sure** 18:23
**sworn** 5:4 22:4
  22:13
**syracuse** 2:12

**t**

**t** 2:12
**take** 7:13,16
  14:9 15:21
  18:7 20:12
**taken** 3:8
**talked** 17:9
**talking** 8:10
**tarallo** 2:10
**tell** 7:6,8 12:3
**testified** 5:5
**testify** 22:5
**testifying** 4:22
**testimony**
  13:14 18:24
  22:8,10
**thank** 14:13,14
  20:18
**therefor** 4:3
**thereto** 4:19
**think** 14:5,7
  15:3,8,16
  17:17 18:11,13
  18:22 20:19
**thought** 15:2
**time** 7:14 10:3
  10:13 13:9,12
  14:6 15:2
  17:17 18:23,25

  19:6,11 20:5
  20:16 21:3
  22:8
**tiny** 7:22
**today** 5:19 6:2
  8:7 15:3,12
**tone** 6:25
**totally** 17:15
**toting** 20:7
**transcript** 4:12
  6:3,8,25 20:24
  22:6,7,8 24:11
**traveling** 20:5
**trial** 1:15 4:15
**true** 11:21 22:7
  24:11
**truth** 12:3 22:5
**truthful** 11:24
  12:13
**trying** 6:12
  12:12
**turn** 12:16
  14:10 20:11
**turned** 20:8
**tv** 20:10
**two** 15:17,21
**type** 19:13

**u**

**uh** 7:2
**under** 11:12
**understand** 7:7
  7:9,11
**uniform** 3:2
**unit** 17:16

**united** 1:2
**unscrew** 19:22
**use** 18:17
**used** 18:7
**using** 18:20
**utilized** 4:15

**v**

**vaguely** 16:14
**verbal** 6:22
**versus** 17:8
**video** 1:16

**w**

**waived** 3:5
  4:18
**want** 6:13
  14:23 15:20
  18:23
**warnings** 13:23
**watch** 15:22
**way** 15:5 19:16
  24:15
**westchester**
  22:3 24:5
**western** 1:2
**whereof** 24:17
**winton** 2:4
**witness** 4:22
  5:8 14:14
  15:23 24:17
**wondering**
  16:15,17 17:6
**written** 6:3

**x**

**x** 1:3,11

**y**

**years** 13:8,11
  13:15
**york** 1:2,17 2:4
  2:12 5:10 11:8
  22:2 24:3,8

**z**

**zoom** 1:16

Federal Rules of Civil Procedure

Rule 30


(e)  Review  By  the  Witness;  Changes.

(1)  Review;  Statement  of  Changes.  On  request  by  the
deponent  or  a  party  before  the  deposition  is
completed,  the  deponent  must  be  allowed  30  days
after  being  notified  by  the  officer  that  the
transcript  or  recording  is  available  in  which:

(A)  to  review  the  transcript  or  recording;  and

(B)  if  there  are  changes  in  form  or  substance,  to
sign  a  statement  listing  the  changes  and  the
reasons  for  making  them.

(2)  Changes  Indicated  in  the  Officer's  Certificate.
The  officer  must  note  in  the  certificate  prescribed
by  Rule  30(f)(1)  whether  a  review  was  requested
and,  if  so,  must  attach  any  changes  the  deponent
makes  during  the  30-day  period.


DISCLAIMER:  THE  FOREGOING  FEDERAL  PROCEDURE  RULES
ARE  PROVIDED  FOR  INFORMATIONAL  PURPOSES  ONLY.
THE  ABOVE  RULES  ARE  CURRENT  AS  OF  APRIL  1,
2019.  PLEASE  REFER  TO  THE  APPLICABLE  FEDERAL  RULES
OF  CIVIL  PROCEDURE  FOR  UP-TO-DATE  INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.