UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL S. MARCELLIN, individually, and as Co-Administrator of the Estate of Charles E. Hollowell, deceased, and JESSICA HOLLOWELL-McKAY, as Co-Administrator of the Estate of Charles E. Hollowell, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>HP, INC., and STAPLES, INC.,<br><br>Defendants. | **Civ. No. 1:21-cv-00704-JLS** |

**HP, INC. AND STAPLES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Introduction ..................................................................................................................5

Background ...................................................................................................................5

    A.  Carol Marcellin's Purchase of the HP Pavilion dv6-3200 ..................................5

    B.  The Computer Was Supplied with Multiple Warnings Against the Use of
Non-HP Replacement Batteries ...................................................................... 6

    C.  Despite HP's Warnings, a Non-HP Lithium-Ion Battery Was Installed in the
Computer in 2015 or Some Point Thereafter .................................................. 7

    D.  The Identity of the Person Who Replaced the Battery Is Not Known ...............7

    E.  The Subject Fire ..............................................................................................8

Argument .....................................................................................................................8

    A.  Summary Judgment Standard ..........................................................................8

    B.  Strict Products Liability and Negligence Claims under New York Law ..........................10

        1.  Requirements for Proving Manufacturing Defects ....................................10

        2.  Requirements for Proving Design Defects .................................................11

        3.  Requirements for Proving A Failure To Warn ...........................................11

    C.  Plaintiffs' Claims Fail Because Defendants Did Not Design, Manufacture,
Sell the Lithium-Ion Battery That Allegedly Caused the Fire .........................12

    D.  Plaintiffs' Failure to Warn Claim Fails Because It Is Undisputed That the
Computer Did in Fact Include Adequate Warnings .........................................13

    E.  Because Plaintiffs Are Unable to Identify the Individual Who Replaced the
Battery, Their Failure to Warn Claim Is Speculative ......................................13

    F.  Plaintiffs' Design Defect Claim Must Be Dismissed for Lack Expert Testimony ...........14

    Conclusion ...........................................................................................................16

# TABLE OF AUTHORITIES

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 56..........................................................................................................8,9

**Federal Rules of Evidence**

Fed. R. Evid. 702............................................................................................................15

**Cases**

*Adeyinka v. Yankee Fiber Control, Inc.*, No. 05 CIV.0751 RJS, 2009 WL 3154319
(S.D.N.Y. Sept. 23, 2009)................................................................................................11

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970)...........................................................9

*Allen v. Cuomo*, 100 F.3d 253 (2d Cir. 1996).................................................................9

*Almonte v. Averna Vision & Robotics, Inc.,* 128 F. Supp. 3d 729 (W.D.N.Y. 2015)........11, 14, 16

*Amica Mut. Ins. Co. v. Electrolux Home Prods*., 440 F. Supp. 3d 211
(W.D.N.Y. 2020) ............................................................................................12, 15, 16

*Amorgianos v. Amtrak*, 303 F.3d 256 (2d Cir. 2002) ...................................................15

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)...................................................9

*Asante-Addae v. Sodexo, Inc*., 631 F. App'x 68 (2d Cir. 2016) ...................................9, 14

*Bustamante v. Kind, LLC*, 100 F.4th 419 (2d Cir. May 2, 2024) ..................................15

*Caprara v. Chrysler Corp*., 52 N.Y.2d 114, 129 (1981) .................................................10

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ...................................................8, 9

*Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001) .........................................10, 11

*Daley v. McNeil Consumer Products Co., a Div. of McNeil-PPC, Inc.,* 164 F.Supp. 2d 367
(S.D.N.Y. 2001)...............................................................................................................11

*Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993) ......................................15

*Fane v. Zimmer, Inc.,* 927 F.2d 124, 128 (2d Cir. 1991)..............................................11

*Greenwood v. Arthrex, Inc*., 2023 U.S. Dist. LEXIS 88094 (W.D.N.Y. May 19, 2023) .............11

*Homesite Ins. Co. A/S/O Adam Long v. Shenzhen Lepower Int'l Elecs. Co., Ltd*.,
No. 6:23-CV-981, 2024 U.S. Dist. LEXIS 22002, at *3-4 (N.D.N.Y. Feb. 8, 2024)...................10

*Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986)..........................................................10

*Lancaster Silo & Block Co. v. Northern Propane Gas Co.,* 75 A.D.2d 55 (App. Div. 1980).......12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ...........................9

*Maxwell v. Howmedica Osteonics Corp.*, 713 F. Supp. 2d 84 (N.D.N.Y. 2010) .........................14

*Miccio v. ConAgra Foods, Inc.,* 224 F. Supp. 3d 200 (W.D.N.Y. 2016) ....................................10

*Mulhall v. Hannafin,* 45 A.D.3d 55, 841 N.Y.S.2d 282 (1st Dep't 2007) ...................................12

*Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993)..........................................................................9

*Perazone v. Sears, Roebuck & Co.,* 128 A.D.2d 15, 515 N.Y.S.2d 908 (3d Dep't 1987) ............10

*Reed v. Pfizer, Inc.,* 839 F. Supp. 2d 571 (E.D.N.Y. 2012) ........................................................12

*Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123 (N.D.N.Y. 2022) .......................................10

*Rogers v. Westfalia Associated Techs.,* 485 F. Supp. 2d 121 (N.D.N.Y. 2007)....................12, 14

*Ruthosky v. John Deere Co.*, 235 A.D.2d 620, 651 N.Y.S.2d 717 (4th Dep't 1997)....................11

*Scheinberg v. Merck & Co., Inc. (In re Fosamax Prods. Liab. Litig.)*, 924 F. Supp. 2d 477
(S.D.N.Y. 2013).............................................................................................................................11

*Schiller v. National Presto Indus.,* 225 A.D.2d 1053 (App. Div. 1996)................................12, 14

*Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998)............................................................................9

*Sura v. Zimmer, Inc.,* No. 15-cv-6719 MAT, 2018 U.S. Dist. LEXIS 61875
(W.D.N.Y. Apr. 11, 2018) .............................................................................................................14

*Warlikowski v. Burger King Corp.,* 9 A.D.3d 360, 362 (App. Div. 2004) .............................12, 14

*United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) .....................................................15

# INTRODUCTION

Plaintiffs have sued HP, Inc. ("HP") and Staples, Inc. ("Staples," collectively with HP, the "Defendants"), alleging that a lithium-ion battery inside an HP notebook computer overcharged, ignited, and caused a fire. Defendants are entitled to summary judgment on the Plaintiffs' claims because it is undisputed that the subject battery was an unauthorized non-HP replacement battery installed into the computer by some unknown person years after the purchase date. Plaintiffs' alternative theories also fail. Conceding that the battery was not an HP product, Plaintiffs claim that HP failed to warn users against using unauthorized replacement batteries. This claim fails because it is undisputed that HP <u>did</u> in fact provide warnings with the subject computer, and Plaintiffs have no evidence that the warnings were deficient. Moreover, because Plaintiffs have not identified the individual who did replace the battery, Plaintiffs are forced to rely on speculation as to whether this unknown person did, or would have, read the warnings, or whether this unknown person had knowledge about replacement batteries such that warnings were not necessary. Finally, Plaintiffs also suggest that the subject computer was defectively designed because did not detect the unauthorized battery. This claim fails as well because Plaintiffs lack expert evidence to support this claim.  Defendants further state as follows:

# BACKGROUND

## A.  Carol Marcellin's Purchase of the HP Pavilion dv6-3200

The notebook computer at issue in this case was an HP Pavilion dv6-3200 notebook computer (the "Computer"). On February 7, 2011, HP sold the Computer to Staples (*Ex. 1*, HP's Supplemental Answers to Plaintiffs' Second Interrogatories, at Ans. No. 1), where it was ultimately purchased by plaintiff Carol Marcellin ("Marcellin"). *Ex. 2* (Deposition of Carol Marcellin, Vol. I) at 69:12-16**.** On March 5, 2011, Marcellin registered the Computer under her name at her Ceres, NY, home address. (Marcellin's Registration Record and the Product

Registration Data are attached as *Ex. 3* (Registration Record and Product Registration Data)*; see also* Levites Decl. ¶ 2.  It is thus clear that Marcellin purchased the Computer on or before March 5, 2011.

**B.  The Computer Was Supplied with Multiple Warnings Against the Use of Non-HP Replacement Batteries**

The Computer as sold by HP was packaged with three manuals: (1) the Notebook PC User Guide ("User Guide"), (2) Notebook Essentials, and (3) the HP Pavilion dv6 Entertainment PC Maintenance and Service Guide ("Maintenance Guide"). Levites Decl. ¶ 2. Each of these manuals contained warnings and instructions regarding the use of authorized replacement batteries. The User Guide warned, "To reduce potential safety issues, use only the battery provided with the computer, a replacement battery provided by HP, or a compatible battery purchased from HP." *Ex. 4* (User Guide) at HP00110. The User Guide also instructed users to refer to the HP website for information on ordering an authorized replacement battery. *Id.* at HP00116.

The Notebook Essentials manual also warned against the use of unauthorized replacement batteries. In a chapter entitled, "Chapter 5: Keeping the computer safe," the Notebook Essentials manual warned users to only use replacement batteries "provided by HP" or "purchased as an accessory from HP." *Ex. 5* (Notebook Essentials) at HP00208-HP00210. Finally, the Maintenance Guide provided a list of authorized replacement batteries, with the spare part number for each. *Ex. 6* (Maintenance Guide) at HP00294.

In sum, HP provided warnings regarding replacement batteries in three manuals provided with the Computer. As Defendants' human factors expert, Dr. Joseph Sala, noted, these three manuals "provided extensive instructions on how to handle battery replacement, including spare part numbers for the eligible replacement batteries, how to carry out the replacement procedure, as well as additional sources for further information." Levites Decl. ¶ 2. Dr. Sala further opined

that HP's warnings were "reasonable and adequate in terms of format, location, and content. These warnings are clear, unambiguous, and capitalize on formatting recommendations for safety information provided by both scientific literature and guidance documents." *Id.* Plaintiffs have not identified any expert who will dispute Dr. Sala's opinion that the warnings were sufficient. Thus, the existence and adequacy of the warnings is not in dispute.

### C. Despite HP's Warnings, a Non-HP Lithium-Ion Battery Was Installed in the Computer in 2015 or Some Point Thereafter

It is undisputed that the lithium-ion battery in the Computer was not an HP battery. It was not an HP authorized battery, and it was not original to the Computer. The lithium-ion battery in the Computer at the time of the fire had a 2015 date code, meaning it was installed <u>at least</u> four years after Marcellin's purchase of the Computer. Levites Decl. ¶ 3. Plaintiffs agree that battery in the Computer at the time of the fire was (1) *not* original to the Computer, (2) was not an HP or HP-approved product, and (3) was manufactured in 2015. As Plaintiffs' expert concedes, "The laptop battery pack was not the original battery pack contained in the computer at the time it was purchased and appears to be an unauthorized or counterfeit battery pack. Markings on the battery pack printed circuit board appear to indicate this battery pack was manufactured in 2015, which is more than four years after the subject laptop was manufactured." *Ex. 7* (Report of Dr. Steve Martin) at p. 6.

### D. The Identity of the Person Who Replaced the Battery Is Not Known

Marcellin denies that she replaced the Computer's battery at any time and claims she does not know who changed the battery. *Ex. 8* (Deposition of Carol Marcellin, Vol. 2) at 8:14-9:10. Thus, while it is undisputed that *somebody* had obtained the replacement battery from some unknown source and installed it into the Computer after Marcellin purchased the Computer, that person has not been identified.

### E. The Subject Fire

On the early morning of January 23, 2020, a fire broke out at Marcellin's Ceres, NY, home where she lived with decedent Charles Hollowell. *Ex. 9* (Complaint) at ¶ 12. Marcellin contends that she was awoken by the sound of her smoke detector (*Ex. 2* at 160:5-7) and discovered a fire in her home office. *Id.* at 164:12-16. She contends that upon discovering the fire, she attempted to assist Hollowell out of the house to escape the fire but was unable to get him out of the bedroom.[1] *Id.* at 125:9-127:7. Marcellin then left Hollowell on the bedroom floor, went out to her car, and drove down the road so that she could call 911 using her vehicle's OnStar service.[2] *Id.* at 127:9-128:4. Plaintiffs contend that Hollowell died before help could arrive. *Ex. 10* at ¶ 14.

This action followed. Marcellin and Hollowell's daughter, Jessica Hollowell-McKay, co-administrators of Hollowell's estate, sued HP, claiming that "the fire was caused by the overcharging, ignition and explosion of the lithium-ion battery in the laptop." *Ex. 10* at ¶ 17. Their Complaint includes counts for (1) strict liability – manufacturing defect, (2) strict liability – design defect, (3) strict liability – failure to warn, and (4) negligence. While HP disputes that the lithium-ion battery caused the fire, assuming that to be the case for purposes of summary judgment, the Plaintiffs' claims against HP still fail for the reasons set forth below.

## ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v.*

---

[1] Hollowell was in poor health and suffered from dementia and was unable to leave on his own.
[2] Marcellin testified that she could not find her cell phone and could not access her land line because of the fire. She testified that she was unable to reach OnStar from her driveway and had to drive down the street to get service.

*Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255, *citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970). Once the moving party has satisfied its burden, "the nonmoving party must come forward with 'specific facts showing there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal citations omitted). Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

"When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993), *quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (*citing Anderson*, 477 U.S. at 247-48). A "party opposing summary judgment may not rely on 'speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Asante-*

*Addae v. Sodexo, Inc.*, 631 F. App'x 68, 68 (2d Cir. 2016), *quoting Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986).

### B.  Strict Products Liability and Negligence Claims under New York Law

Plaintiffs have asserted claims for negligence and strict products liability. In New York, "the elements of negligence claims based on design defect, manufacturing defect, and failure to warn theories are the same as those under strict liability." *Miccio v. ConAgra Foods, Inc.,* 224 F. Supp. 3d 200, 208 (W.D.N.Y. 2016), *citing Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001). A manufacturing defect "results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm. *Homesite Ins. Co. A/S/O Adam Long v. Shenzhen Lepower Int'l Elecs. Co., Ltd..*, No. 6:23-CV-981, 2024 U.S. Dist. LEXIS 22002, at *3-4 (N.D.N.Y. Feb. 8, 2024), citing *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123, 129 (N.D.N.Y. 2022). A design defect "results when the product as designed is unreasonably dangerous for its intended use." *Id.* A warning defect "occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm." *Id.*

### 1.  Requirements for Proving Manufacturing Defects

"To plead and prove a manufacturing flaw under either negligence or strict liability, the plaintiff must show that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,' and that the defect was the cause of plaintiff's injury." *Colon,* 199 F. Supp. 2d at 85-86, *citing Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 129 (1981). "In other words, a manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." *Id., citing Perazone v. Sears, Roebuck & Co.,* 128 A.D.2d 15, 515 N.Y.S.2d 908, 911 (3d Dep't 1987).

### 2. Requirements for Proving Design Defects

"In a claim for defective design, plaintiff must make a showing that (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." *Colon*, 199 F. Supp. 2d at 83 (citations omitted). "To recover under a theory of strict products liability for sale of a defectively designed product, it is well established that a plaintiff must plead and prove that there was a feasible design alternative that would have made the product safer." *Scheinberg v. Merck & Co., Inc. (In re Fosamax Prods. Liab. Litig.)*, 924 F. Supp. 2d 477, 485 (S.D.N.Y. 2013), *citing Daley v. McNeil Consumer Products Co., a Div. of McNeil-PPC, Inc.,* 164 F.Supp.2d 367, 374 (S.D.N.Y. 2001). Crucially, the plaintiff must demonstrate that the "feasible design alternative existed at the time of manufacture." *Colon,*199 F. Supp. 2d at 83-84, *citing Fane v. Zimmer, Inc.,* 927 F.2d 124, 128 (2d Cir. 1991); *Ruthosky v. John Deere Co.*, 235 A.D.2d 620, 651 N.Y.S.2d 717, 719 (4th Dep't 1997). "[E]xpert testimony alleging the existence of a reasonable alternative design must almost always either (1) point to the existence of such a design in the marketplace, or (2) test, or at least design in detail, a product incorporating the suggested modifications." *Almonte v. Averna Vision & Robotics, Inc.,* 128 F. Supp. 3d 729, 750 (W.D.N.Y. 2015), *quoting Adeyinka v. Yankee Fiber Control, Inc.*, No. 05 CIV.0751 RJS, 2009 WL 3154319, at *2 (S.D.N.Y. Sept. 23, 2009).

### 3. Requirements for Proving A Failure To Warn

A plaintiff alleging a failure to warn must prove "(1) that a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known and (3) that failure to do so was the proximate cause of harm." *Scheinberg*, 924 F. Supp. 2d 477, 486 (S.D.N.Y. 2013); *Greenwood v. Arthrex, Inc*., 2023 U.S. Dist. LEXIS 88094, at *10-11 (W.D.N.Y.

May 19, 2023). "As part of satisfying those elements, a plaintiff is 'required to prove that the product did not contain adequate warnings.'" *Reed v. Pfizer, Inc.,* 839 F. Supp. 2d 571, 575 (E.D.N.Y. 2012), quoting *Mulhall v. Hannafin,* 45 A.D.3d 55, 841 N.Y.S.2d 282 (1st Dep't 2007). If a plaintiff cannot specifically identify a deficiency in the defendant's warnings, the failure to warn claim will be dismissed. *Amica Mut. Ins. Co. v. Electrolux Home Prods.,* 440 F. Supp. 3d 211, 220 (W.D.N.Y. 2020) (failure to warn claim dismissed on summary judgment where the plaintiff could not identify any deficiencies in the warnings provided with the dryer).

There is no duty to warn against known dangers. *Warlikowski v. Burger King Corp.,* 9 A.D.3d 360, 362 (App. Div. 2004) (summary judgment granted to manufacturer of fryer unit where the injured plaintiff was an experienced fry-cook who had sustained previous burns from spattering shortening in the past, and was aware the shortening was hot; under these circumstances there was no duty to warn). See also *Schiller v. National Presto Indus.,* 225 A.D.2d 1053, 1054 (App. Div. 1996), quoting *Lancaster Silo & Block Co. v. Northern Propane Gas Co.,* 75 A.D.2d 55 (App. Div. 1980) ("There is no duty 'to warn a customer already aware--through common knowledge or learning--of a specific hazard'"); *Rogers v. Westfalia Associated Techs.,* 485 F. Supp. 2d 121, 129 (N.D.N.Y. 2007) (no duty to warn "where the injured party was fully aware of the hazard through general knowledge, observation or common sense").

### C. Plaintiffs' Claims Fail Because Defendants Did Not Design, Manufacture, or Sell the Lithium-Ion Battery That Allegedly Caused the Fire

As discussed above, it is undisputed that the lithium-ion battery that allegedly caused the fire was an unauthorized replacement battery installed some years after the Computer was sold to Marcellin in 2011. The lithium-ion battery was not an HP battery, was not an HP-authorized battery, and was not sold with the Computer. Marcellin denies purchasing a replacement battery

for the Computer; thus, there is no evidence Staples sold it. Thus, even assuming the battery caused

the fire, Defendants cannot be held liable for the fire and Mr. Hollowell's death.

**D.  Plaintiffs' Failure to Warn Claim Fails Because It Is Undisputed That the Computer Did in Fact Include Adequate Warnings**

Plaintiffs cannot meet their burden of proving that the warnings provided with the

Computer were deficient. As discussed above, the Computer as sold by HP was packaged with

three user manuals, each of which warned against the use of non-HP, or non-HP-approved,

replacement batteries. The User Guide specifically warned users to "use only the battery provided

with the computer, a replacement battery provided by HP, or a compatible battery purchased from

HP. *Ex. 5* at HP00110. The Notebook Essentials manual instructed users to use only a battery

provided with the computer, battery provided by HP, or purchased as an accessory from HP. *Ex.

6* at HP00210. The Maintenance Guide packaged with the Computer included a list of eligible

replacement batteries for the Computer with the spare parts numbers for each. *Ex. 7* at HP00294.

As Dr. Sala notes in his report, the warnings "were reasonable and adequate in terms of format,

content and location, and were consistent with the scientific literature and guidance documents."

Levites Decl. ¶ 2. Plaintiffs have not presented any evidence or expert testimony to refute this.

Because plaintiffs cannot identify a deficiency in HP's warnings, the failure to warn claim must

be dismissed. *Electrolux Home Prods.,* 440 F. Supp. 3d at 220.

**E.  Because Plaintiffs Are Unable to Identify the Individual Who Replaced the Battery, Their Failure to Warn Claim Is Speculative**

As set forth above, it is undisputed that (1) the Computer was supplied with warnings

against the use of unauthorized replacement batteries, and (2) the warnings supplied with the

Computer were adequate. Marcellin denies that she installed the lithium-ion battery and has not

identified the individual who did install the battery.[3] Thus, to the extent Plaintiffs may attempt to argue that Computer's warnings were inadequate, they would have to rely on speculation as to whether the unknown individual who replaced the battery read and understood the warnings. There is no information at all regarding this unidentified person's state of knowledge. Indeed, if the unknown individual was knowledgeable about replacement batteries, a warning would not have been necessary at all. *See Warlikowski,* 9 A.D.3d at 362; *Schiller,* 225 A.D.2d at 1054; *Rogers,* 485 F. Supp. 2d at 129. Plaintiffs are thus left to speculate that the Computer's warnings were insufficient for the unknown individual, and because speculation is insufficient to avoid dismissal on summary judgment, the failure to warn claim fails. *See Asante-Addae*, 631 F. App'x at 68.

## F. Plaintiffs' Design Defect Claim Must Be Dismissed for Lack Expert Testimony

Finally, Plaintiffs argue that the Computer was defectively designed because it did not have a battery authentication system to detect unauthorized replacement batteries. This claim also fails because the Plaintiffs lack expert testimony to support this claim. As discussed above, a plaintiff claiming a design defect must "(1) point to the existence of such a design in the marketplace, or (2) test, or at least design in detail, a product incorporating the suggested modifications." *Almonte,* 128 F. Supp. 3d at 750. "A plaintiff seeking to establish a design defect is required to provide expert testimony as to the feasibility and efficacy of alternative designs." *Sura v. Zimmer, Inc.,* No. 15-cv-6719 MAT, 2018 U.S. Dist. LEXIS 61875, at *6-7 (W.D.N.Y. Apr. 11, 2018), citing *Maxwell v. Howmedica Osteonics Corp.*, 713 F. Supp. 2d 84, 91 (N.D.N.Y. 2010). Here, Plaintiffs

---

[3] Marcellin is adamant that she did not replace the battery, that she never had the Computer serviced, that she never asked someone else to change the battery, and that she has no idea who put the 2015 battery into her 2011 Computer. *Ex. 10* at 8:14-9:10. Thus, it is impossible for any party in this case to inquire into the state of mind of the person who replaced the battery in order to determine whether the warnings were read and understood or even whether warnings were necessary.

lack expert testimony to support their design defect claim, and as such it should be dismissed on summary judgment.

Plaintiffs' design defect claim is supported entirely by the opinion of their expert, Dr. Steve Martin. However, as he has no qualifications in computer design and programming, and he employed no methodology to support his opinions, he must be precluded from testifying in this case, and his opinion cannot support an opposition to the Defendants' motion for summary judgment. The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The District Court acts as a gatekeeper and is charged with the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Bustamante v. Kind, LLC*, 100 F.4th 419, 427 (2d Cir. May 2, 2024) (quotation marks omitted), *quoting Amorgianos v. Amtrak*, 303 F.3d 256, 265 (2d Cir. 2002), *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Ultimately, the proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the testimony satisfies Rule 702. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

"Determining whether to admit a proffered expert's testimony is a two-step process." *Electrolux Home Prods.*, 440 F. Supp. 3d at 215. "First, the Court must ensure that the witness is,

by knowledge, skill, experience, training or education, sufficiently qualified as an expert to testify about matters that are scientific, technical, or specialized in nature." *Id., citing Almonte,* 128 F. Supp. 3d at 739. Second, the Court must determine whether the expert's testimony is reliable and will assist the trier of fact to understand the evidence or determine an issue of fact. *Electrolux Home Prods.*, 440 F. Supp. 3d at 215 (citations omitted).

Here, as explained in the Defendants' motion to preclude Dr. Martin's testimony, Dr. Martin has no education, training, or professional experience in notebook computer design or manufacture, nor is he an expert in human factors or warnings. He has not published any peer-reviewed articles about notebook computers. For this reason alone he should be precluded from testifying. Additionally, however, Dr. Martin's opinion is not based on any reliable methodology. He opines in his report that the Computer was defectively designed because it did not incorporate a warning system for the user that an unauthorized battery pack was installed. However, as explained in Defendants' accompanying motion, this opinion is based on nothing more than speculation and has absolutely no basis in any methodology, studies, or tests, and he even admitted that he does not know whether battery authentication systems were available for notebook computers back in 2010 when the subject Computer was manufactured. Because Dr. Martin is unqualified as an expert and his testimony is wholly unreliable, it must be stricken, leaving Plaintiffs with no evidence to support their design defect claim.

## CONCLUSION

The following facts are undisputed. The lithium-ion battery that allegedly caused the fire at Marcellin's home was not an HP product or an HP-authorized product. The subject battery had been installed in Marcellin's 2011 computer at some point during or after 2015 by an unknown individual. It is also undisputed that HP sold the Computer with manuals that repeatedly warned against using unauthorized replacement batteries, and Plaintiffs present no evidence that these

warnings were deficient. Finally, as the Plaintiffs' expert has no evidence that notebook computers

designed in 2010 had battery authentication systems, and he has not tested or designed a version

of the Computer that was capable of defeating counterfeit batteries sold in 2015. For these reasons,

the Plaintiffs' claims against HP must be dismissed.

Respectfully Submitted,
HP INC.,
STAPLES, INC.,
By their attorneys,

Respectfully submitted,
Benjamin H. Levites, 5557046
Coughlin Betke LLP
175 Federal Street
Boston, MA 02110
(617) 988-8050
blevites@coughlinbetke.com

Jaclyn S. Wanemaker
Smith Sovik Kendrick & Sugnet P.C.
6245 Sheridan Drive
Suite 218
Williamsville, NY 14221
315-474-2911
Fax: 315-474-6015
Email: jwanemaker@smithsovik.com

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent
electronically to all counsel of record on Monday, May 12, 2025.

Benjamin Levites