UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL S. MARCELLIN, individually, and as Co-Administrator of the Estate of Charles E. Hollowell, deceased, and JESSICA HOLLOWELL-McKAY, as Co-Administrator of the Estate of Charles E. Hollowell, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>HP, INC., and STAPLES, INC.,<br><br>Defendants. | **Civ. No. 1:21-cv-00704-JLS-HKS** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS AND TO STRIKE**

**TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

SUMMARY OF RELEVANT FACTS ....................................................................................2

ARGUMENT.............................................................................................................................9

    I.      DEFENDANTS' MOTION FOR SANCTIONS IS FRIVOLOUS AND
             PROCEDURALLY DEFECTIVE................................................................................9

    II.     DEFENDANTS' MOTION TO STRIKE IS ALSO FRIVOLOUS AND
             SHOULD BE DENIED ...............................................................................................12

CONCLUSION........................................................................................................................13

i

# TABLE OF AUTHORITIES

Pages(s)

**CASES**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    579 F.3d 143, 150 (2d Cir. 2009)......................................................................................10

*Gissander v. Credit Corp Solutions, Inc.*,
358 F.Supp.3d 213, 222 (WDNY 2019)...........................................................................9

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
    2019 WL 1244493 (S.D.N.Y. Mar. 18, 2019) [aff'd 850 F. App'x 38 (2d Cir. 2021)].....10

*Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*,
    2014 WL 7338849 (E.D.N.Y. Dec. 22, 2014) ....................................................................9

*Manhattan Enter. Grp., LLC v. Higgins*,
    2019 WL 4601524 (S.D.N.Y. Sept. 22, 2019) .................................................................10

*Mareno v. Rowe*,
    910 F.2d 1043, 1047 (2d Cir. 1990)..................................................................................10

*Rogers v. Henry,*
    2017 WL 5495805 (E.D.N.Y. Sept. 12, 2017) ...................................................................9

*Simon DeBartolo Grp. L.P. v. Richard E. Jacobs Grp., Inc.*,
    186 F.3d 157, 167 (2d Cir. 1999).....................................................................................10

**OTHER SOURCES**

Federal Rule of Civil Procedure 11(c)(2) .................................................................................1, 9, 10

**PRELIMINARY STATEMENT**

Plaintiffs provide the following Memorandum of Law in Opposition to Defendants' motion to strike the rebuttal report of Plaintiffs' expert fire investigator Jason Karasinski, and for sanctions. Both motions should be denied.

Defendants' motion for sanctions is procedurally defective and factually frivolous. Defendants failed to comply with the strict requirements of F.R.Civ.P. 11(c)(2) in that the motion wasn't filed separately and Defendants failed to serve the motion on Plaintiffs before filing it. Moreover, the alleged conduct warranting sanctions does not remotely warrant such relief. Plaintiffs have acted in good faith throughout this litigation in spite of Defendants' obstruction and have revised discovery responses each time additional information was obtained. The alleged misrepresentations Defendants assert warrant sanctions were good faith representations based on limited available evidence of the date of purchase of the subject laptop and the limited recollection of an elderly Plaintiff who suffered a severe trauma when she was forced to leave her long-time partner in the burning building where he perished. Additionally, the date of purchase of the laptop that Plaintiffs weren't able to state with certainty was actually in the possession of Defendants from the outset of the case but not produced until two and half years into the litigation. Finally, the date of purchase of the subject laptop was never relevant to Plaintiffs' claims.

Defendants' motion to strike is equally meritless. Defendant substituted new experts, for its prior expert who had actually investigated the cause of the fire. These new experts put forward a new theory that even HP's expert who attended the lab inspection of the evidence removed from the fire admitted he had never considered until weeks before his deposition. Confronted with this new theory, Plaintiffs' expert sought additional information from Plaintiff Carol Marcellin that was not contained in her deposition transcripts because defense counsel had not asked her these

1

questions. Nothing about the information in Plaintiffs' declaration or in the Rebuttal Report of Mr. Karasinski would justify the relief Defendants seek.

For the reasons set forth below, Defendants motions should be denied in all respects.

## SUMMARY OF RELEVANT FACTS

**A. Motion for Sanctions**

Plaintiffs allege that a fire caused by a thermal runaway reaction in the battery pack of an HP Pinnacle laptop ("subject laptop") resulted in the death of Decedent and in Plaintiff Carol Marcellin ("Plaintiff") suffering physical injury and severe emotional damages. Plaintiffs filed a complaint against the manufacturer of the laptop, HP, Inc., and the retailer that sold the laptop to Plaintiff, Staples, Inc. Plaintiff alleged that the HP Pavillion laptop was defectively designed because it lacked a battery authentication system that would have prevented the unauthorized battery pack that went into thermal runaway from functioning in the laptop or at least warned the user that the battery pack was unauthorized. Plaintiffs also alleged that the subject laptop was defective because it lacked adequate warnings of the dangers of unauthorized battery packs and that HP breached its post-manufacture duty to warn by failing to contact past purchasers such as Plaintiff Carol Marcellin to advise them of the dangers of unauthorized battery packs which HP learned after manufacture. (Schwarz Dec., ¶ 2).

Shortly after the fire, investigation revealed that although the battery pack in the subject laptop at the time of the fire had labeling suggesting it was manufactured or authorized by HP, it was actually a counterfeit unauthorized battery pack lacking essential safety features required to prevent thermal runaway in the battery cells. Thereafter, efforts were made to discover the origin of the unauthorized battery pack. The events of the night of the fire understandably took a heavy emotional toll on seventy-eight year-old Plaintiff Carol Marcellin. All her paper records were destroyed in the fire, and she had difficulty recalling when she purchased the subject laptop. Based

2

on the markings on the remains of the battery pack that caused the fire, it appeared that it had been manufactured in 2014, which was after the date of manufacture of the laptop. (*Id.*, ¶ 3).

Plaintiffs' experts had also been able to determine from the remnants of the laptop that it had been manufactured in 2010 and an online search of warranty information for the subject laptop indicated that the warranty was registered on March 5, 2011, but not who registered the warranty. This was the information provided in Plaintiffs' complaint filed on June 2, 2021. In Plaintiffs' initial answers to Defendant HP's interrogatories served on December 16, 2021, Plaintiffs stated, upon information and belief, the subject laptop was purchased prior to March 5, 2011 based on warranty records discovered online for the serial number of the subject laptop. (*Id.*, ¶ 4).

Plaintiffs served discovery requests upon Defendants HP and Staples for records reflecting the purchase of the subject laptop from Staples and warranty registration information from HP that would assist in determining the date the laptop was purchased. Defendants failed to produce this information until the following year. (*Id.*, ¶ 5).

Plaintiff was able to recreate her credit card account information and searches were made of all available credit card purchases and her Amazon purchase history looking for any record of her purchasing a replacement battery pack for the laptop. All that could be located was a purchase from a wholesale electronics distributor in an amount that was too low to have been a replacement battery pack. On March 16, 2023, while preparing for her deposition with her counsel, Plaintiff Carol Marcellin, now in her eighties, indicated she had no recollection of purchasing a replacement battery for the subject laptop and was no longer sure of the year she purchased it either, now thinking it may have been purchased in 2015. All she could recall definitively was that she purchased it at Staples. (*Id.*, ¶ 6).

3

Without any reliable recollection from Plaintiff Carol Marcellin, an investigation of other potential explanations for the replacement battery pack being in the subject laptop ensued. It was discovered that Staples sold refurbished laptops. This seemed to be a possible explanation for the origin of the replacement battery pack, i.e., that Plaintiff had purchased a refurbished laptop from Staples that contained the replacement battery pack. Upon learning these two bits of information, Plaintiff's counsel immediately emailed defense counsel to inform them of this new information about when and how the replacement battery pack came to be in the subject laptop. Defense counsel responded to the email by cancelling the deposition for March 17, 2020. (*Id.*, ¶ 7).

On March 27, 2023 Defendant provided Answers to Plaintiffs' First set of Interrogatories. These answers failed to provide information on when and to whom the laptop was sold by HP whether it was Plaintiff or someone else that registered the warranty for the subject laptop on March 5, 2011, even though this information was clearly in HP's possession. (*Id.*, ¶ 8).

On March 30, 2023 Plaintiffs served their First Amended Answers to HP's First Set of Interrogatories providing the new understanding of when the laptop was purchased by Plaintiff. On the same date, Plaintiffs served a Second Set of Interrogatories specifically requesting information on the identity of the person who registered the warranty on March 5, 2011, as well as other information related to the subject laptop. Plaintiffs also served additional discovery requests upon Staples seeking information that would verify the date of purchase of the subject laptop. (*Id.*, ¶ 9).

Months went by with multiple requests made to defendants to provide responses to Plaintiffs' discovery demands. This history is provided in detail in the Declaration in Support of Plaintiffs' motion to compel filed on July 25, 2023. (Dkt. 25-1). (*Id.*, ¶ 10).

4

Plaintiffs were finally deposed on July 7, 2023. HP waited until after the deposition to provide answers to Plaintiffs' Second Set of Interrogatories, but still failed to provide information on the date of sale of the subject laptop or the identity of the individual who registered the warranty on March 5, 2011. HP also failed to respond to Plaintiffs' Second Request for the Production of Documents, which also sought records on the date and purchaser of the laptop and the warranty registrant. Defendant Staples failed to respond to all discovery requests. (*Id.*, ¶ 11). Thus, the motion to compel was filed on July 25, 2023. (Dkt. 25).

It was not until January 11, 2024 that HP finally provided the information Plaintiffs had been requesting for eight months regarding when the subject laptop was first sold and to whom, as well as who registered the warranty on March 5, 2011. This information established that HP sold the subject laptop to Staples in February of 2011 and it was Plaintiff Carol Marcellin who registered the warranty on March 5, 2011, meaning Plaintiff Marcellin's recollection of those events was inaccurate as to the date she purchased the laptop. After receiving this information, Plaintiffs again amended their interrogatory answers to conform to facts as they were now understood. (*Id.*, ¶ 12).

Plaintiff Carol Marcellin was deposed for a second time on July 9, 2024 when she was a few weeks short of her eighty-second birthday so she could be questioned again about her recollection of her purchase of the subject laptop and any replacement battery pack for such laptop. She was still unable to remember exactly when she purchased the subject laptop and could not recall ever purchasing a replacement battery pack for this laptop. (*Id.*, ¶ 13).

Plaintiffs claim that the subject laptop was defectively designed because it lacked a battery authentication system. Who purchased the replacement battery pack for the subject laptop is irrelevant to this claim, because regardless of who purchased it, Plaintiffs claim it should not have

5

worked in the laptop if an available battery authentication system had been provided when manufactured. Plaintiffs also claim that HP breached its post-manufacture duty to warn of the dangers of buying replacement battery packs which lacked vital protections against thermal runaway. During discovery two HP employees admitted that HP was aware of fires being caused by such dangerous replacement battery packs causing fires in its laptops going back as far as 2014. Based on its warranty information, HP had information necessary to provide post-manufacture warnings to Plaintiff Carol Marcellin, but failed to do so. Who purchased the replacement battery pack is also irrelevant to this claim. (*Id.*, ¶ 14).

    **B.  Motion to Strike**

On February 27, 2020 with all interested parties placed on notice, a scene investigation of the subject property was conducted following standard NFPA 921 protocols. Attending that scene investigation was ACFIT investigator Jeff Luckey, Bryan Davis, a fire investigator for NEFCO and Scott Phillips, of Forensic & Failure Analysis, both retained by Farmers Insurance Company, the company that insured the home, Joseph Tomizzi and Paul Simonian of Peter Vallas Associates, representing Staples, Andy Litzinger and Jason Karasinski, from Fire Research Technology, and Gregory Gorbett, of Fire Dynamics Analysis, representing HP. Initially background information was provided by Jeff Luckey, the local fire investigator who was at the scene on the day of the fire, and Brian Davis of NEFCO, who had conducted an initial examination of the scene before all parties were put on notice. At that point, Greg Gorbett, a highly experienced fire investigator representing HP at this inspection, requested that he be able to perform a Matterport 3D video scan of the interior of the home. (Karasinski Dec., ¶3).

While Gorbett was doing his Matterport scan, everyone else inspected and took photos of the home exterior. Once Gorbett completed his Matterport scan of the structure, all parties were

6

allowed back into the property to get their photographs of the interior of the structure. Once everyone was done inspecting and photographing the interior of the structure, all investigators reconvened back outside and discussed the next steps on how to handle the removal process of any evidence. All investigators present agreed that the room of origin was the office, so they jointly processed the evidence in the office space with photo documentation, as well as evidence tents for collection, and proceeded to collect that evidence. The office electrical circuits were traced to identify the breaker that was in the tripped position in the load center, and all evidence was packaged. All investigators were asked if there was any other evidence anyone requested to bring back for a future laboratory examination and all parties were satisfied with the evidence collected, including, specifically, Mr. Gorbett. (*Id.*).

During the examination based on the scene, documentation of witness statements, fire patterns and fire dynamics, all interested parties agreed that the office was the room of origin, as had Jeff Luckey in his Allegheny Fire Investigation Report, and that the likely ignition source was the HP laptop. The battery compartment and battery pack showed significant heat and fire damage and ejecta from battery cells which came into contact with combustible materials stored inside the closet and was likely the ignition sequence and cause for this fire. All but two of the six cells in the battery pack had been ejected from the laptop. The two remaining cells had exploded releasing their contents with the shattered cans remaining in the laptop battery compartment. The two cells that retained their internal contents were found closer to the laptop. Two other cells found more distant from the laptop had completely ejected their internal cell contents and pieces of battery cell internal copper foil windings were found in multiple locations throughout the office after being ejected from the HP laptop. (Id., ¶ 4).

7

The investigators carefully inspected debris removed from the closet where they determined the fire had originated and found a piece of copper battery windings that had been ejected from the explosion of one of the cells. This was photographed by both Mr. Karasinski and Mr. Gorbett on behalf of HP and determined to the ignition source that had started the fire in the closet, which then spread to the rest of the structure. (*Id.*, ¶¶ 5,6). A laboratory examination was subsequently conducted on October 30, 2020 that was attended by another HP expert, Donald Galler. All evidence removed from the fire scene was examined at the lab examination. (*Id.*, ¶ 7).

After Mr. Karasinski issued his report opining that a fragment ejected from a cell in the subject laptop battery pack ignited combustibles in the office closet, HP produced reports from two experts who attended neither the scene inspection nor the lab inspection. HP did not produce a report from its expert who attended the scene inspection, Mr. Gorbett. Relying only on Mr. Gorbett's photographs and having never inspected the physical evidence, these two new experts came up with a new theory that a fire ignited from some "unknown" source, caused the laptop batteries to go into thermal runaway. (*Id.* ¶ 9). To rebut this unexpected and unsupported theory, Mr. Karasinski requested that Plaintiff Carol Marcellin answer several questions that had not been asked of her at her depositions. Her answers were reduced to a Declaration. (Dkt. 66-18). Mr. Karasinski then produced a rebuttal report which was based in part on the answers provided by Plaintiff Carol Marcellin but also on the physical evidence he had reviewed during the scene inspection. (*Id.*, ¶ 12-15).

ARGUMENT

POINT I

**DEFENDANTS' MOTION FOR SANCTIONS IS FRIVOLOUS
AND PROCEDURALLY DEFECTIVE**

"Rule 11 requires that a motion for sanctions 'be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).'" *Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*, No. 12-CV-0642 (DRH) (AKT), 2014 WL 7338849, at *3 (E.D.N.Y. Dec. 22, 2014) (quoting Fed. R. Civ. P. 11(c) (2) ). Rule 11 also requires that "the motion must be served on the offending party twenty-one days before it is filed with the court." *Rogers v. Henry,* No. 16-CV-05271 (KAM)(VMS), 2017 WL 5495805, at *4 (E.D.N.Y. Sept. 12, 2017) (citing Fed. R. Civ. P. 11(c)(2) ). "Any motion seeking Rule 11 sanctions that does not comply with these provisions must be denied." *Intravaia,* 2014 WL 7338849, at *3.

Defendants have failed to meet the procedural requirements of Rule 11(c)(2) in filing the present motion. The motion was not filed separately, but was filed along with a Motion to Strike Plaintiffs' expert's rebuttal report. Defendants also failed to serve Plaintiffs with its motion for sanctions twenty-one days before filing. These procedural failures require denial of the motion. *See also, Gissander v. Credit Corp Solutions, Inc.*, 358 F.Supp.3d 213, 222 (WDNY 2019).

Moreover, as set forth in detail in the attorneys' declaration in opposition to these motions, no alleged conduct by Plaintiffs or their counsel warrants sanctions under Rule 11. Plaintiffs have amended their interrogatory answers each time additional evidence was uncovered regarding the date of purchase of the subject laptop and whether Plaintiff Carol Marcellin purchased the replacement battery pack that was in the subject laptop when the fire occurred. (See Schwarz Declaration filed herewith). Plaintiffs and their counsel have done nothing to mislead Defendants. In fact, had Defendants produced the information in their possession requested in discovery in a

9

timely fashion, Plaintiffs would not have been forced to rely on the memory of an eighty-year-old whose records were destroyed in a fire caused by Defendants to provide information on the date of sale and warranty registration.  Defendants knew all along when the laptop was purchased and when and by whom the warranty was registered in March of 2011.  However, this information was not finally provided until two and a half years into the litigation.

      Even when a party has complied with the safe harbor requirements of Rule 11(c)(2), which Defendants clearly have not, sanctions are appropriate against the adverse party only after "a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (citation and internal quotation marks omitted). "The appropriateness of sanctions is distinct from the underlying merits of a claim." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, No. 15 Civ. 2457 (GHW), 2019 WL 1244493, at *7 (S.D.N.Y. Mar. 18, 2019) (citation omitted), *vacated in part*, 991 F.3d 361 (2d Cir. 2021), *and aff'd in part*, 850 F. App'x 38 (2d Cir. 2021). A pleading "violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Manhattan Enter. Grp., LLC v. Higgins*, No. 18 Civ. 6396 (VSB), 2019 WL 4601524, at *2 (S.D.N.Y. Sept. 22, 2019) (citation and internal quotation marks omitted), *aff'd*, 816 F. App'x 512 (2d Cir. 2020). "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Simon DeBartolo Grp. L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)).

      Moreover, the alleged misrepresentations of Plaintiffs are not even relevant to Plaintiffs' claims of defective design and violation of the post-manufacture duty to warn.  The defective

10

design claim is based on the failure of the subject laptop to be designed with an available authentication system to detect an unauthorized battery pack, regardless of how that unauthorized battery pack came to be present in the laptop. Similarly, Defendant HP's corporate deponent, Atkinson, and its employee Pipho, admitted at their depositions that they were aware as far back as 2014 that counterfeit battery packs lacking required safety systems were being used in its laptops and causing catastrophic fires. (See Plaintiffs' Counter Statement of Undisputed Facts submitted in opposition to Defendants' Motion for Summary Judgment, ¶¶ 33-35). HP's expert Donald Galler also admitted at his deposition that he had investigated between 20 and 30 fires in HP laptops going back as far as 2015 and learned that in approximately half of these fires an unauthorized battery pack lacking safety devices was the cause of the fire. He further testified that in each instance he informed HP of his findings. (*Id.*, ¶¶ 36-37). Plaintiffs allege that this knowledge possessed by HP years before the subject fire gave rise to a post-manufacture duty to warn, which HP breached by taking no action to warn warranty registrants such as Plaintiff Carol Marcellin of this danger. The identity of the purchaser of the unauthorized battery pack is also irrelevant to this claim.

## POINT II

### DEFENDANTS' MOTION TO STRIKE IS ALSO FRIVOLOUS AND SHOULD BE DENIED

Defendants contend that it was somehow improper and unfair for Plaintiff's fire investigator to seek additional information from Plaintiff not provided in her two depositions because she was never asked, in rebutting the opinions of Defendants' experts Horn and Myers that a preexisting fire of unknown ignition source caused the subject laptop battery cells to go into thermal runaway rather than the explosion of the cells causing the fire.  As detailed in the Declaration of Jason Karasinski, Plaintiff's expert fire investigator, all investigators who attended the scene examination, including HP's designated investigator Gregg Gorbett, unanimously concluded that a fragment of copper battery windings ejected from one of the cells that had gone into thermal runaway in the subject laptop landed on combustible materials in the office closet where the fire originated.  When Karasinski learned that Gorbett did not issue a report for HP, but HP substituted Horn and Myers who now hypothesized that the fire preexisted the thermal runaway reaction in the battery cells, he sought additional information that was not provided in Plaintiff Carol Marcellin's two deposition transcripts because she had never been asked the questions.

Karasinski was not the only one surprised by this new novel theory HP's electrical engineering expert, Donald Galler, who also issued a report on behalf of HP and testified he had investigated approximately 10-15 other incidents where HP laptop fires had resulted from unauthorized battery packs going into thermal runaway due to a lack of safety devices and that he had not even considered that a pre-existing fire could have caused the thermal runaway until a few weeks before his deposition.  (See Schwarz Declaration in Opposition to Motion for Summary Judgment in in Support of Cross-Motion for Summary Judgment and Cross-Motion to Exclude Expert Testimony, Ex. G, 73:22-74:14).

12

   There is nothing improper in Karasinski seeking information that was not inquired into by defense counsel at her two depositions. What is improper, is HP substituting Horn and Myers in place of Gorbett, who clearly would not contradict the findings of the local fire investigators and the investigators of all interested parties that the thermal runaway reaction in the laptop battery cells caused the fire that killed Charles Hollowell and devastated Plaintiff Carol Marcellin. As such, Defendants' motion to strike should be denied.

## CONCLUSION

   For the reasons set for the herein, Defendants' motion for sanctions and to strike the Karasinski rebuttal report should be denied and this Court should grant such other and further relief as it deems just and proper.

DATED:  June 9, 2025
    Rochester, New York

             FARACI LANGE, LLP

             <u>/s/ Stephen G. Schwarz</u>
             Stephen G. Schwarz, Esq.
             Joshua M. Mankoff, Esq.
             1882 South Winton Road, Suite 1
             Rochester, New York 14618
             Telephone: (585) 325-5150
             Facsimile: (585) 325-3285
             Email: sschwarz@faraci.com
             Email: jmankoff@faraci.com

             *Attorneys for Plaintiffs*