UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL S. MARCELLIN, individually, and as Co-Administrator of the Estate of Charles E. Hollowell, deceased, and JESSICA HOLLOWELL-McKAY, as Co-Administrator of the Estate of Charles E. Hollowell, deceased,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>HP, INC., and STAPLES, INC.,<br><br>　　　　　　Defendants. | **Civ. No. 1:21-cv-00704-JLS-HKS** |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DONALD GALLER, QUINN HORN, AND TIMOTHY MYERS PURSUANT TO F.R.E. 702**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    CERTAIN OPINIONS OF HP EXPERT DONALD GALLER
         ARE UNRELIABLE AND SHOULD BE EXCLUDED ............................................2

    II.    THE OPINION OF DR. HORN THAT THE SUBJECT LAPTOP
         BATTERY CELLS WERE PROVOKED INTO THERMAL RUNAWAY
         BY AN EXTERNAL FIRE ATTACK SHOULD BE EXCLUDED .............................3

    III.    THE OPINION OF DR. MYERS THAT THE ORIGIN AND CAUSE
         OF THE FIRE ARE UNKNOWN SHOULD BE EXCLUDED ..................................7

CONCLUSION................................................................................................................................9

**PRELIMINARY STATEMENT**

Defendants have failed to oppose Plaintiffs' motion to strike two of the three opinions Plaintiffs have challenged of Defendants' expert Donald Galler, conceding that these opinions are inadmissible. They continue to assert that the twenty-year old Compaq laptop that Plaintiff Carol Marcelin mistakenly believed was in the office closet at the time of the fire, but of which no trace was found, is somehow relevant to the cause of the fire, without providing any support for such position.

Defendants oppose the motion to strike the opinion of Quinn Horn, Ph.D. with a declaration from Dr. Horn now contending that the metal fragment found in the closet where the fire originated that he previously contended did not exist, has not been confirmed to be a fragment that came from one of the battery cells, even though he failed to attend the laboratory examination of the fragment and HP's expert, Galler, that did attend, failed to distinguish this fragment from any of the other fragments of battery materials that were collected and analyzed. Interestingly, Dr. Horn's declaration is silent regarding support for his theory that battery cells only explode and release their contents when heated externally, which is the core of his opinion that the thermal runaway was caused by a fire of unknown origin. At his deposition when pressed for any support in the literature for his theory, he referenced a published article he co-authored, claiming that somewhere in that article was a paragraph that supported his theory. This article was presented to the Court in support of this motion demonstrating it not only failed to support his theory, but refuted it quoting a section of the article that described cells ejecting their contents when thermal runaway occurs from either internal or external heating. (Dkt. No. 80-2 at p. 8). HP responds to this by claiming the sentence after the quoted section somehow changes the clear statements made, but as explained below, that sentence only further undercuts Dr. Horn's theory.

1

HP does not provide any argument to resurrect Dr. Myer's opinion that the fire he concedes started in the office closet had an "undetermined" ignition source, since Dr. Myer's opinion is entirely reliant on Dr. Horn's unsupported theory that the thermal runaway reaction in the subject laptop battery pack must have occurred through external heating.

Thus, the challenged opinions, unsupported by the facts or any reliable methodology other than the ipse dixit of the experts, must be excluded.

## ARGUMENT

## POINT I

## CERTAIN OPINIONS OF HP EXPERT DONALD GALLER ARE UNRELIABLE AND SHOULD BE EXCLUDED

Mr. Galler listed eight opinions he intended to provide at trial regarding this case. (Dkt. No. 77-1, p. 20). Plaintiffs moved to exclude the following three as unreliable and unsupported by the facts:

- Opinion 4 – "Authentication of the type hypothesized by Dr. Martin was not industry standard in 2010 and was not generally used by other manufacturers of notebook computers in 2010."

- Opinion 5 – "Even if authentication had been used it is more likely than not that it would have been defeated by the manufacturer of the subject battery pack by the time the subject battery pack was installed. Therefore, the fact that authentication was not used is not the cause of the Marcellin fire." (Galler Rpt. P. 20).

- Opinion 8 – "There is no scientific process that explains the missing Compaq computer and battery pack testified to by Ms. Marcellin. It would not have burned up to the point of complete disappearance in the fire." (Galler Rept. p. 20).

HP has provided no opposition to the exclusion of Galler opinions 4 or 5. Thus, those opinions must be excluded.

Regarding Opinion 8, HP continues to suggest, without factual basis, that the Plaintiff Carol Marcellin's prior Compaq laptop she hadn't sued in over a decade prior to the fire is somehow

relevant to this case. It is conceded that Plaintiff Carol Marcellin believed that old Compaq laptop was still in the closet at the time of the fire, but no evidence was found to confirm that. Mr. Galler's opinion that it would not have burned up in the fire is accurate, but in light of that fact, it could not have been present and therefore could not have caused the fire. Carol Marcellin was obviously mistaken in her recollection which led to her counsel's representation that the battery from that laptop could not be produced as requested. Galler also admitted he had no basis to claim the old Compaq computer Ms. Marcellin believed was still in the office closet had anything to do with the fire. (Dkt. No. 78, 283:20-285:24). Thus, the Compaq laptop is irrelevant and allowing this opinion would only confuse the jury without providing any probative value and should be excluded under F.R.E. 702.

## POINT II

### THE OPINION OF DR. HORN THAT THE SUBJECT LAPTOP BATTERY CELLS WERE PROVOKED INTO THERMAL RUNAWAY BY AN EXTERNAL FIRE ATTACK SHOULD BE EXCLUDED

Plaintiffs moved to exclude Dr. Horn's opinion that the thermal runaway reaction in the four cells of the subject laptop was caused by external heating from a fire from an undetermined source and the explosion of these cells was not the ignition source of the fire that originated in the office closet. In their motion, Plaintiffs demonstrated that Dr. Horn's theory was unsupported by the facts or the scientific literature and was solely his ipse dixit opinion. Dr. Horn's opinion was based on three objectively false premises. First, that no internal cell fragments were found in the place where the fire originated, the office closet. Second, that lithium-ion battery cells only eject their contents during thermal runaway reactions caused by external heating. Third, that the testimony of Carol Marcellin that she was awakened by the smoke alarm and then witnessed what was obviously a thermal runaway reaction of one of the cells made it impossible for the thermal

3

runaway reaction to have caused the fire. In Plaintiffs initial brief they demonstrated why all three of those premises are false, leaving Dr. Horn's opinion without any factual support. (Dkt. No. 71-2, pp. 15-24).

In his report, Dr. Horn claimed that no cell fragments were found in the area of origin of the fire, the office closet. (Dkt. No. 80-1, 179:1-5). When confronted at his deposition with a photograph in Mr. Karasinski's rebuttal report that showed the internal cell fragment found in the closet, Dr. Horn replied: "The only thing I have seen is a blurry photo in Karasinski's rebuttal report that shows what he claims is a component from the instant battery with no proof, no analysis, no anything on – on, you know, showing what exactly that is. That's all I can say." (*Id.*, 178:1-8). Dr. Horn's entire opinion was based on his review of photographs taken by the fire investigator HP sent to the fire inspection scene a month after the fire, Gregg Gorbett. Those photographs were not produced to Plaintiffs until after Dr. Horn's deposition, despite requests that they be produced being made three months before. (See Dkt. No. 90). Once Gorbett's photographs were produced, it was apparent that Gorbett took two photographs of the same fragment removed from the closet. (See Dkt. No. 71-5). In his declaration in opposition to the motion to exclude his opinion, Dr. Horn now claims the fragment removed from the closet is not a fragment of internal battery windings ejected from one of the cells. (Dkt. No. 92-4). He makes this statement because he claims the fragment was not properly analyzed. (Id.). However, it is undisputed that all fragments were reviewed at the lab inspection in October of 2020 by HP's expert Galler, and there is nothing in Galler's report that provides an opinion that any of the cell winding fragments recovered and brought to the inspection were not internal fragment from the battery cells that ejected their contents. (Dkt. No. 77-1). Similar to his Exponent colleague, Dr. Myers, Dr. Horn faults the efforts made by other experts, including HP's designated experts Galler and Gorbett who actually

4

reviewed the physical evidence, for not doing enough. That evidence was available to Dr. Horn both at that lab inspection and thereafter. Instead, Dr. Horn or HP's attorneys chose for him to only look at photographs of the physical evidence and now Dr. Horn claims he can't verify that the fragment is from one of the cells by simply looking at photographs. (Dkt. No. 92-4; Dkt. No. 80-1, 98:1-100:19).

At his deposition, Horn was asked if he could point to any published article or literature that supported his opinion that cell contents were only ejected when thermal runaway is caused by an external heating source. After unsuccessfully attempting to justify this theory with UL testing requirements, he then identified a document he co-authored. (*Id.*, 207:1-209:1; 215:5-215:20; 260:5-261:5). When this document was located on a break, he was unable to point to anything in the lengthy document supporting this opinion, but was sure it was in there. (Id., 260:5-261:5). When Plaintiffs moved to exclude his testimony, they attached the entire document and quoted a section of it that not only failed to support his ipse dixit theory, but refuted it:

> In cases where a catastrophic failure induces rapid thermal runaway (e.g., from a puncture to a cell in a pack from an external source, external heating of the battery pack, or **overcharge of the cell**), the initiating cell may be the most heavily damaged cell. Maximum damage occurs to the initiating cell here because the shorting and subsequent thermal runaway are so rapid they often result ***in ejection or partial ejection of the cell windings***.

(Dkt. No. 80-2, p. 8)[emphasis added]. Dr. Horn's opposition declaration does not address the lack of support in his sole alleged reference for his ispe dixit theory that only external heating causes cell content ejection. Instead, HP's attorneys argue that the next sentence following the above quoted language somehow negates the clear statement that ejection of cell contents can occur from overcharge of a cell. The "missing" sentence urged by HP's attorneys as essential to understanding the above paragraph states: "*Neighboring cells are heated more gradually before going into*

5

*thermal runaway and may not experience the same level of internal damage as the initiating cell.*" (*Id.*).

HP's attorneys don't explain why this sentence negates the clear statement that ejection of cell contents can occur from overcharging a cell to provoke thermal runaway, nor is it discussed in Horn's declaration. Moreover, this sentence further negates Horn's other supposed basis for his conclusion that the thermal runaway was caused by an external fire – his interpretation of events from Plaintiff Carol Marcellin's testimony.

As discussed at length in Plaintiff's initial memorandum of law (Doc. No. 71-2, pp. 21-24), Dr. Horn claimed that there had to be an external fire to cause the smoke alarm to go off awakening Ms. Marcellin and prompting her to investigate and witness what was obviously a thermal runaway reaction occurring in one of the cells. At his deposition, Dr. Horn admitted that he had no way of knowing whether what she witnessed was the first or last cell to go into thermal runaway. (Doc. No. 80-1, 295:14-297:1). If it was the last cell, then his timing theory would also fall apart, as the smoke alarm could have been activated by smoke from the first cell exploding and what she witnessed minutes later was one of the subsequent cells that was heated more gradually by the first cell going into thermal runaway. Dr. Horn further testified that all the cells would have likely gone into thermal runaway at approximately the same time because, based upon his theory, they were all heated by the same external mysterious fire. (*Id.*, 296:17-297:1). Thus, contrary to Dr. Horn's report, but consistent with his publication, if one cell goes into thermal runaway from overcharge, it will more gradually heat the other cells to provoke a subsequent thermal runaway reaction in adjoining cells and some cells may not suffer as much damage, which is precisely what was found here with two of the cells ejected from the laptop but remaining intact.

As stated in Plaintiffs' initial memorandum, all three of Dr. Horn's alleged supporting facts for his theory that the cells went into thermal runaway from an external fire attack are unsupported by the facts or the literature. The alleged missing "important sentence" from his publication only drives more nails into the coffin. The fact that HP's attorneys and not Dr. Horn were the ones that attempted to interpret this sentence to mean the opposite of what it says is also telling.

Accordingly, Dr. Horn's opinion that an external fire caused the thermal runaway reaction in the cells in the subject laptop should be excluded as unsupported by the facts or the literature and unreliable.

## POINT III

### DR. MYER'S OPINION THAT THE IGNITION SOURCE IS "UNDETERMINED" SHOULD ALSO BE EXCLUDED BECAUSE IT IS BASED ON DR. HORN'S INADMISSIBLE THEORY

As discussed at length in Plaintiffs' initial memorandum, Dr. Myers began from the premise that there must have been an external fire source that caused the cells in the subject laptop to go into thermal runaway and then searched in vain for the ignition source for such fictitious fire, which he was unsurprisingly unable to find. (See Dkt. No71-2 at pp. 24-30). Thus, he concluded the fire ignition source was "undetermined". Because Dr. Myer's opinion is based entirely on Dr. Horn's unsupported theory that there must have been an external fire, Dr. Myer's opinion must also be excluded.

HP's attorneys claim that Myers simply disagrees with Plaintiffs' fire experts and also claims that there is no evidence that its on-the-scene investigator, Gorbett, agreed with Plaintiffs' expert Karasinski. Since Gorbett remains among the living, HP had every opportunity to refute Karasinski's sworn testimony that Gorbett and all the other investigators agreed both that the fire originated in the office closet and that the ignition source was ejected cell windings from the

subject laptop. (Dkt. No. 70-1). Yet, HP has failed to present any sworn declaration from Gorbett, the fire investigation expert it hired to investigate the source of the fire that killed decedent, to refute Karasinski's sworn testimony.

As further documented in Plaintiffs' initial memorandum of law, all the other potential sources Dr. Myers was able to dream up, including the couch in the living room, the candle next to it and the furnace, lacked any factual support from any of Gorbett's photographs, the sole source of information Myers relied upon. (Dkt. No. 80, 197:3-16; 198:4-12; 199:2-8). HP is left to argue, as Myers did, that Gorbett and the other investigators failed to do a thorough enough job to rule out these other implausible sources, justifying Myers' opinion that the ignition source is undetermined. This conclusion is unsupported by any of the facts in the record before this Court.

The obvious explanation here, that had to be ignored by Dr. Myers while adopting Dr. Horn's ipse dixit theory as true, is that one or more of subject laptop cells went into thermal runaway from overcharge that resulted in ejection of a hot flaming battery cell component into combustibles on the closet floor that started the fire. Ironically, Dr. Myers featured a photograph of this fragment taken by Mr. Gorbett at the scene inspection in his report which he labeled "Photograph of debris from office closet". (See Dkt. No. 76, Figure 26 and compare to Dkt. No. 75-1). Yet, Dr. Myers concluded the office closet was the point of origin of the fire. (Dkt. No. 80, 201:1-203:2). It is hardly a mystery why Dr. Myers failed to find evidence that the couch in the living room, the candle or the furnace was the ignition source, and why he was forced to concede that there wasn't any evidence to support any of these possible sources.

Thus, Dr. Myers' opinion that the ignition source of the fire that began in the office closet is "undetermined" must also be excluded.

## CONCLUSION

For the reasons set for the herein, Plaintiffs' cross-motion to exclude the opinions of Myers and Horn and portions of the opinions of Galler should be granted and this Court should also grant such other and further relief as it deems just and proper.

DATED: July 7, 2025
Rochester, New York

FARACI LANGE, LLP

/s/ Stephen G. Schwarz
Stephen G. Schwarz, Esq.
Joshua M. Mankoff, Esq.
1882 South Winton Road, Suite 1
Rochester, New York 14618
Telephone: (585) 325-5150
Facsimile: (585) 325-3285
Email: sschwarz@faraci.com
Email: jmankoff@faraci.com

*Attorneys for Plaintiffs*