UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

CAROL S. MARCELLIN, individually, and )
as Co-Administrator of the Estate of Charles )
E. Hollowell, deceased, and JESSICA )
HOLLOWELL-MCKAY, as Co- )
Administrator, of the Estate of Charles E. )
Hollowell, deceased, )
  )
           Plaintiffs )
   v. )          Case No. 1:21-cv-00704-GWC
  )
HP, INC., and STAPLES, INC., )
  )
           Defendants. )
  )

## **ORDER ON MOTION FOR SANCTIONS AND TO STRIKE**

This case concerns the death of Charles Hollowell, domestic partner of plaintiff Carol

Marcellin, in a house fire on January 24, 2020, in Ceres, New York. Plaintiffs attribute the fire to

the malfunction of an HP Pavillion DV6 laptop computer purchased by Ms. Marcellin from

Staples, Inc, and seek to recover damages under various theories of negligence and strict

products liability. Defendants move for sanctions in the form of dismissal of the Plaintiffs'

complaint, or, in the alternative, reimbursement of expenses and attorneys' fees they claim were

incurred as a result of amendments to Marcellin's discovery responses and Plaintiffs' motion to

compel additional discovery. Defendants also move to strike the rebuttal reports submitted by

Plaintiffs' experts Steve Martin and Jason Karasinski.

FACTS

I.    Motion for Sanctions

Plaintiffs allege that the January 2020 fire resulted from the overcharge, ignition, and explosion of the HP laptop's lithium-ion battery. At an October 30, 2020 laboratory inspection of evidence collected from the fire, experts from both sides determined that the battery installed at the time of the fire was *not* an original HP component, but instead a replacement manufactured in 2015. (Doc. 77-1, 15) Plaintiffs' experts, meanwhile, had determined from records available to Marcellin that a warranty for the laptop had been registered on March 5, 2011, though these records did not provide the identity of the warranty's registrar. (Doc. 70, 2). In their complaint, filed June 2, 2021, plaintiffs stated that Marcellin had purchased the laptop on or about 2010, (Doc. 1, 2), and replaced the battery at some later date. (Doc. 47-3, 5) Plaintiffs made similar statements in their response to HP's initial interrogatories on December 16, 2021.

Due to the loss of her paper records in the fire, Marcellin is unable to determine that she had ever purchased a replacement battery. She has no memory of purchasing a replacement battery herself and denies having done so. (Doc. 66-8, 11). She did locate an electronic record of a purchase in the amount of $16 from a wholesale electronics distributor in 2015. Marcellin stated in discovery responses submitted March 9, 2022 that the purchase was for a replacement battery for an older Compaq laptop. (Doc. 42-1, 5)

While preparing Marcellin for deposition in March 2023, plaintiffs' counsel came to believe the theory of the laptop's purchase laid out in the complaint was incorrect. (Doc. 70, 3) Plaintiffs also concluded that the unspecified 2015 purchase, based on its amount, could not in fact have been for the Compaq replacement battery, as previously represented. After determining

Staples sold refurbished laptops, plaintiffs' counsel informed defendants they now believed that Marcellin purchased the laptop from Staples in 2015, by which point the replacement battery had already been installed.  On March 30, 2023, Plaintiffs amended their answers to HP's interrogatories to reflect this new understanding.  Plaintiffs' amended answers maintained that Marcellin had at some point in the preceding decade purchased and installed a replacement battery for the older Compaq laptop.  Plaintiffs served a second set of interrogatories on Staples seeking information on the date the laptop was purchased.  (Doc. 70, 4).

Neither HP nor Staples had responded to plaintiffs' interrogatories by the time Marcellin was deposed on July 7, 2023.  At her deposition she testified that she had purchased the laptop in 2015, and denied ever replacing the battery.  (Doc. 66-6, 74) Plaintiffs then filed a motion to compel HP's response to plaintiffs' outstanding interrogatories.  On January 11, 2024, HP produced documents which established that the notebook had been delivered to Staples on February 2011 and registered for warranty by Marcellin in March of that year. (Doc. 66-1, 8).

In response, Plaintiffs again amended their answers to HP's interrogatories, in which they stated (1) the now-undisputed fact that Marcellin purchased the laptop from Staples in 2011, (2) that she had purchased a replacement battery for a Compaq laptop at some point in the preceding decade, but could locate no record of making that purchase, and (3) that the Compaq laptop had been stored in a closet and completely destroyed by the fire.  (Doc. 66-8, 13).  At her second deposition, taken July 9, 2024, she maintained that she never replaced the battery in the HP laptop, and denied any knowledge of how the battery came to be replaced.  (Doc. 66-7, 8).

II.     HP's Motion to Strike

II.    HP's Motion to Strike

On February 27, 2020, a month after the fire, Jason Karasinski, the Plaintiff's fire expert, and Greg Gorbett, a fire expert retained by HP, conducted a scene investigation with Jeff Luckey of the Alleghany County Fire Investigation Team and representatives of Staples and representatives of Farmers Insurance Company. According to Karasinski, upon completing the investigation, all parties present agreed that the HP laptop was the likely cause of the January 20 fire. (Doc. 70-1, 3). Plaintiffs disclosed Karasinski's expert witness report on October 14, 2024, stating his conclusion as to the cause of the fire. Plaintiffs also disclosed the report of their battery expert, Steve Martin, which similarly concluded that the fire resulted from overcharge of the replacement battery cells, leading to a "thermal runaway" event in which the battery cells ejected flaming components into the home's office. (Doc. 66-5, 22) Gorbett did not write a report, and HP later replaced him with Drs. Quinn Horn and Tim Myers, who produced their own expert reports disclosed by HP on December 6, 2024, based on photographs taken by Gorbett during the scene investigation.

Both of HP's new experts reached conclusions contrary to those of the investigators present at the original scene investigation. Dr. Horn's report deemed it unlikely that the fire was caused by thermal runaway of the replacement battery cells, and concluded that the cause of the fire was undetermined. (Doc. 76, 49) Dr. Myers' report stated that evidence from the scene investigation suggested that, rather than the initial cause of the fire, thermal runaway in the replacement battery was the result of an external fire source. (Doc. 77, 32).

Karasinski and Martin then submitted rebuttal reports disclosed by Plaintiffs on January 3, 2025, addressing the conclusions of Drs. Horn and Myers and substantially reiterating the conclusions of their initial reports. In preparing his rebuttal, Karasinski submitted written

questions to Marcellin regarding the night of the incident fire, and relied on her answers as provided in a sworn declaration disclosed by Plaintiffs on December 28, 2024.

HP moves to strike these rebuttal reports on two grounds. First, they contend the reports exceed the scope of rebuttal testimony permitted under Federal Rule of Civil Procedure 26(a)(2)(c)(ii). Second, they argue that the Marcellin declaration on which Karasinski's report relied contradicted her previous deposition testimony, and should thus be struck under the "sham issue of fact" doctrine.

## ANALYSIS

### I.    HP's Motion for Sanctions

The district court has authority to impose sanctions for discovery abuse and, under Federal Rule of Civil Procedure 37, "wide discretion" to do so in response to a party's failure to comply with the court's discovery orders. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d. Cir. 2007). The Second Circuit has enumerated four factors for courts to consider in weighing the appropriateness of sanctions, including "(1) the willfulness of the non-compliant party or the reason for the non-compliance, (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (internal quotation marks and citation omitted). The sanction of dismissal, in particular, "is a drastic remedy that should be imposed only in extreme circumstances," *Shcherbakovskiy*, 490 F.3d at 140 (internal quotation marks and citation omitted," which "should not be imposed under Rule 37 unless the failure to comply with pretrial production is due to willfulness, bad faith, or

information establishing Marcellin's purchase and ownership has been in HP's possession for more than 15 years.

HP also seeks to dismiss the complaint because Marcellin changed her testimony concerning the purchase of a replacement battery. In her original response to HP's interrogatories, Marcellin stated that a charge on her credit card statement for $16.17 on July 22, 2015 corresponded to the purchase of a replacement battery for the Compaq computer. (Doc. 42-1, 6) Plaintiffs now believe the amount of that purchase was too small to have been made for that purpose (Doc. 70, 3). Marcellin states she has no knowledge of what the July 22, 2015 purchase was for. She remains certain that she was not the person who changed the battery in the HP computer.

Both sides now know with certainty that the HP computer was manufactured before February 2011 and was in Marcellin's possession by March when she submitted the warranty registration. They also know that the battery found in the HP computer after the fire was not manufactured until 2015. It had to be a replacement battery since computers are sold with a battery installed. The battery did not install itself. Either Marcellin replaced it and has forgotten about the purchase or someone else in the household, such as her late partner, did it for her. How the replacement battery found its way into the HP computer remains a mystery, but cases frequently have unexplained facts and uncertainty about this issue is insufficient to support dismissal of the complaint.

The same principle applies to the missing Compaq computer. It has never been located. Both parties were represented at an investigation of the fire scene in late February 2020–soon after the fire. No one found the Compaq computer, then or later. Neither side questions its presence in the home prior to the fire, but by the time of the site investigation it was destroyed,

discarded, overlooked or unrecognizable. Neither its loss nor Marcellin's belief that she purchased a replacement battery for the Compaq justify dismissal of the complaint.

II.    HP's Motion to Strike Expert Reports

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) permits disclosure of expert testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party." The district court "has wide discretion in determining whether to permit evidence in rebuttal." *United States v. Tejada,* 956 F.2d 1256, 1266 (2d. Cir. 1992). Rebuttal evidence is properly admissible "when it will explain, repel, disprove or counteract the evidence of the adverse party," but "the scope of a rebuttal is limited to the same subject matter encompassed in the opposing party's expert report." *Scott v. Chipotle Mexican Grill, Inc.,* 315 F.R.D. 33, 44 (S.D.N.Y. 2016). A rebuttal report "is not an opportunity for the correction of any oversights in the plaintiff's case in chief." *Ebbert v. Nassau Co.,* 2008 U.S. Dist. LEXIS 74213 at *13-14 (E.D.N.Y. Sept. 26, 2008).

The rebuttal reports submitted by Plaintiffs' experts Martin and Karasinski satisfy the forgoing criteria. Both are confined to refutations of the theory of the incident fire advanced in the reports of HP's experts Drs. Horn and Myers, namely that subject laptop's replacement battery cells experienced thermal runaway due to an external and pre-existing fire source. HP urges that these rebuttal reports should be struck because they "merely rehash[] the conclusions reached" in Karasinski's and Martin's original reports. (Doc. 66-1, 19 (citing *Lidle v. Cirrus Design Corp.,* 2009 U.S. Dist. LEXIS 118850, *14-15 (S.D.N.Y. Dec. 18, 2009) (Pitman, J.) (citation omitted)). This argument is only half-true. Karasinski's and Martin's first reports asserted one theory of the incident fire; defendant' experts subsequently submitted testimony

asserting a contrary theory. In rebutting it, their second set of reports necessarily restate the conclusion reached by the first.

In preparing his second report, Karasinski submitted written questions to Marcellin and relied on answers provided by her in a written declaration submitted January 3, 2025. (*See* Doc 66-18) HP urges his report should be stricken because Karasinski "could have, and should have, asked her [these questions] previously" and incorporated her responses into his first report. (Doc. 66-1, 18) They contend that "many, if not all, of these questions … were already asked of [Marcellin] at her two depositions under oath in this case." (*Id.* at 19) The record evidence does not support this contention. The questions Karasinski submitted to Marcellin are clearly intended to elicit responses which bear on the plausibility of Drs. Horn and Myers' theory of the fire's cause. (*See* Doc. 66-17) Those questions do not replicate, but expand upon, the set asked of Marcellin at her deposition regarding her discovery and immediate response to the incident fire. (Doc. 66-6, 123-7, 164-6).

Marcellin's declaration in response expands upon the account given at that deposition. The "sham issue of fact" doctrine, which HP argues applies to bar this declaration, "prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." *In re Fosamax Products Liability Litigation*, 707 F.3d 189, 193 (2d. Cir. 2013). The doctrine applies "where the relevant contradictions between [the deposition and declaration] are unequivocal and inescapable, unexplained, arose after the motion for summary judgment was filed, and are central to the claim at issue." *Id.* To that end, HP identifies "internal inconsistencies" between Marcellin's deposition testimony and her subsequent declaration. For example, in the former, Marcellin stated that upon waking to discover the incident fire, she "hope[d] it was just the furnace," and considered that "[m]aybe it

had malfunctioned, and … I could shut [it] down." In the latter, she mentioned "passing by the door behind which the furnace was located and decided to look there first as a possible source." There is no significant inconsistency between these two statements, or the other examples identified by HP.

## CONCLUSION

Both parties have found numerous grounds for complaint with each other's practices throughout the long process of fact discovery in this case. But here, as elsewhere, those complaints do not support a claim of discovery abuse. Defendant HP's motion for sanctions and to strike is DENIED.

Dated at Burlington, in the District of Vermont, this 23rd day of June, 2026.

Geoffrey W. Crawford, U.S. District Judge